(117 App. Div. 66)

PEIRCE v. CORNELL.

(Supreme Court, Appellate Division, First Department. January 11, 1907)

1. CONTRACTS—FORMAL REQUISITES—AGREEMENT TO BE REDUCED TO WRITING.
      Defendant wrote plaintiff, who had the contract for the erection of a building, that defendant would furnish and erect the iron work as called for in the plans and specifications for a certain sum, and purchase such iron work from parties to be named by plaintiff, and that defendant would furnish a bond from a designated guaranty company for a certain per cent. of the amount of the contract, to which plaintiff replied, accepting the offer, and stating that he would submit a contract for defendant to sign. In an action on the contract, one of defendant's agents testified that on several occasions he asked plaintiff when the formal contract would be ready; but it did not appear that defendant ever demanded the formulation of such a contract, and when defendant determined to withdraw from his agreement he based his refusal on the ground that the contract would be unprofitable. Held, that the facts warranted a finding that the parties understood that the correspondence constituted a contract, and not that the agreement was merely tentative, and intended to become effective only on the execution of a formal contract.

2. DAMAGES—DUTY TO REDUCE—CONTRACT—BREACH—COMPLETION BY OTHER PARTY.
      Where defendant agreed with plaintiff to furnish and erect the iron work in a building for the erection of which plaintiff had the contract, and defendant failed to perform his contract, it was the duty of plaintiff to proceed to procure and erect the iron work with reasonable diligence, as cheaply as possible, so as to limit plaintiff's claim for damages.
      [Ed. Note.—For cases in point, see Cent. Dig. vol. 15, Damages, §§ 128-131.]

3. SAME—MEASURE OF DAMAGES.
      Plaintiff had the contract for the erection of a building, and defendant agreed with plaintiff to furnish and erect the iron work; but thereafter defendant refused to perform on the ground that the work would be unprofitable, and plaintiff expressed his willingness to accept a proposal from defendant at a higher figure, conditioned on the understanding that such acceptance should not be construed as a waiver of any right which he might have under the existing contract, whereupon defendant submitted a new proposal, without reference to such condition, and plaintiff contracted with others to do the work at a price in excess of that named by defendant's proposal. Held, that plaintiff was entitled to recover from defendant for the cost of the work in excess of the contract price.
      [Ed. Note.—For cases in point, see Cent. Dig. vol. 15, Damages, §§ 293-296.]

Appeal from Trial Term, New York County.

Action by John Peirce against John M. Cornell. From a judgment in favor of plaintiff, and from an order denying a motion for a new trial, defendant appeals. Affirmed.

Argued before PATTERSON, P. J., INGRAHAM, LAUGHLIN, CLARKE, and SCOTT, JJ.

Lemuel Skidmore, for appellant.

L. Laflin Kellogg, for respondent.

SCOTT, J.   In the years 1897 to 1900, inclusive, the defendant was engaged in business in the city of New York in the furnishing and erection of structural and ornamental steel and iron work for buildings under the name or style of "J. B. & J. M. Cornell." During the same period, and for many years' prior thereto, the plaintiff was in business as a contractor for the erection of buildings in the city of New York and elsewhere.   On December 17, 1897, the plaintiff executed a contract with the city of New York for the erection of a large public building in that city, to be known as the "Hall of Records," and for the erection of which a considerable quantity of structural steel and iron would be required.   The architect employed by the city prepared plans and specifications, showing, among other things, the amount, kind, and dimensions of the structural steel and iron work which would be required to construct the building according to the plans therefor.   The plaintiff thereupon invited proposals for the steel and iron work from a number of concerns engaged in the business, and, among others, addressed such an invitation to defendant.   A representative of defendant examined the plans and specifications in the office of the architect, and obtained a copy thereof, which was delivered to defendant.   After some negotiations letters were exchanged which form the basis of this controversy, and which read as follows:

"New York, Feb'y 23rd, 1898.

"Mr. John Peirce, Temple Court Building, New York City—Dear Sir:   We will furnish and erect the iron and steel work. etc., for the new Hall of Records, as called for in the plans and specifications of Mr. J. R. Thomas, architect, for the sum of two hundred and fifty thousand dollars ($250,000). We will purchase our steel work from parties to be named by you.   It is understood that we are to furnish a bond from the United States Fidelity & Guaranty Company for twenty-five (25%) per cent. of the amount of the contract.   We understand that to be in accordance with our interview with you of yesterday.

"Yours very truly,                               J. B. & J. M. Cornell.

"New York, Feb'y 23rd, 1898.

"Messrs. J. B. & J. M. Cornell, 26th Street and 11th Ave., New York City— Gentlemen:   Acknowledging yours of the 18th instant, I have to say that I accept the offer contained therein to erect the iron and steel work, etc., required under my contract for the new Hall of Records building, and I will submit a contract for you to sign in due season.

"Yours truly,                                    John Peirce."

It appears that just prior to the exchange of these letters plaintiff had stated that if he made a contract with defendant he should desire that the defendant would purchase the structural steel work from the Pencoyd Steel Works, represented by Messrs. A. & P. Roberts, which explains the statement in defendant's letter that he would purchase the structural steel from parties to be named by plaintiff.   Accordingly, before writing the above letter of February 18th, defendant had ob-

tained a price for the structural steel from the Pencoyd Works, which he had accepted, upon receiving the above quoted letter from plaintiff. It does not appear that these letters, or the substance thereof, were communicated to plaintiff. Plaintiff proceeded with his contract with the city, and nothing was done as to putting the agreement between plaintiff and defendant into more formal shape until March 14, 1899, when defendant wrote to plaintiff that the Pencoyd Works had stated that, owing to the long period that had elapsed and the rise in the cost of raw material, they could not furnish the structural steel, except at an advance of $21,000, and the defendant stated that for similar reasons the price of the balance of the work, not to be furnished by the Pencoyd Works, should be advanced $16,500, making a total increase of price for the work to be done by defendant for plaintiff of $38,000. The plaintiff refused to accede to the proposed increase of price, and insisted that, under the letters exchanged in February, 1898, the defendant was bound to furnish and set up the steel and iron work at the price then agreed upon. Defendant refused to be bound by the agreement made in February, 1898, but offered to reopen negotiations upon the basis of an increased price. Still insisting upon his right to hold defendant to his agreement of February, 1898, plaintiff on March 27, 1899, offered to consider a new proposal, on the understanding, however, that the negotiations for a new agreement should in no way affect any claim for damages which he might have against defendant by the reason of the refusal of the latter to abide by his proposal of February 18, 1898. The defendant's only reply was to submit a new proposal at $288,000, unaccompanied by any agreement that the acceptance of the proposal should not affect plaintiff's claim for damages if he had any. Plaintiff thereupon proceeded to open negotiations with other persons, and finally made a contract with another firm to do the work which defendant had proposed to do, but at a price in excess of defendant's original price by $103,788.65, for which sum plaintiff has recovered judgment for damages.

The principal question involved in this appeal is whether or not the letters exchanged between plaintiff and defendant in February, 1898, constituted a valid enforcible contract. It is well settled that parties may by the interchange of letters and telegrams make a valid contract, which is enforceable by either, and that its validity is not necessarily affected because of a stipulation to reduce the contract to a more formal agreement. Sanders v. Pottlitzer Bros. Fruit Co., 144 N. Y. 209, 39 N. E. 75, 29 L. R. A. 431, 43 Am. St. Rep. 757; Pratt v. Hudson R. R. Co., 21 N. Y. 305. Of course, when this rule is invoked, care must be taken not to misconstrue as a completed agreement letters which were intended merely as a part of the preliminary negotiation for a contract. Brown v. N. Y. C. R. R. Co., 44 N. Y. 79. The test is whether or not the proposition by one party and its acceptance by the other shows that the minds of the parties met as to the terms of the contract, leaving no essential term to future agreement. As was said in Pratt v. Hudson R. R. Co., supra, quoted with approval in Sanders v. Pottlitzer Bros. Fruit Co., supra:

"A contract to make and execute a certain written agreement, the terms of which are mutually understood and agreed upon, is in all respects a valid and obligatory contract, when no statutory objection interposes, as the written contract itself would be, if executed. If, therefore, it should appear that the minds of the parties had met, that a proposition for a contract had been made by one party and accepted by the other, that the terms of this contract were in all respects definitely understood and agreed upon, and that a part of the mutual understanding was that a written contract embodying these terms should be drawn and executed by the respective parties, this is an obligatory contract, which neither party is at liberty to refuse to perform."

In the present case there is no element essential to a complete contract which is not to be found in the letters which passed between the parties. The work to be done and the materials to be furnished were identified by reference to the architect's plans and specifications, and it is not contended that there was any doubt or ambiguity on this score. The price to be paid by plaintiff was fixed. The stipulation as to the source from which defendant was to obtain a certain part of the material was included in the proposal, as was also a precise stipulation as to the security which the defendant was to give for the performance of the agreement. There was no element lacking in any wise essential to a complete contract, and there is nothing to be found in either letter suggesting that any contract stipulation remained to be agreed upon in the future. That a formal contract was not tendered by plaintiff is quite unimportant, and seems to have been so considered by both of the parties. It is true that one of defendant's agents testifies that he, on several occasions, asked plaintiff when the formal contract would be ready; but there is nothing in the case to show that the defendant ever demanded or insisted upon the formulation of such a contract, and it is very significant that, when defendant determined to withdraw from his agreement, he did not base his refusal to perform upon plaintiff's neglect to tender a formal contract for execution, but placed it solely and exclusively upon the ground that the price of steel and iron had advanced so that it would be unprofitable to do the work at the price proposed.

It is true that reference is made by the defendant to the length of time which had elapsed since the exchange of letters; but the defendant does not base his refusal to perform the work on the ground of delay, but solely upon the advance in price. As to the delay in ordering deliveries, it does not appear that it was unreasonable, and we do not understand the defendant as seriously claiming that it was. The defendant knew, when he made the proposal, what the general character and size of the building was to be, and doubtless realized that the demand for steel would depend upon the preliminary or preparatory work which plaintiff, as general contractor for the building, might be required to do, before he could begin to use steel or iron on the structure. From the letters themselves, the circumstances under which they were exchanged, and the subsequent acts of the parties, we think that the jury were quite justified in finding that the parties intended to make, and understood that they were making, a valid binding contract by the letters which they exchanged in February, 1898, and that defendant's present contention that the agreement was merely tentative, and not intended to become effective until a more formal contract had been

entered into, is a mere afterthought, put forth as an excuse for receding from an agreement which it had become unprofitable to fulfill. We are of the opinion that the court committed no error in permitting plaintiff to prove what it actually cost him to do the work for which defendant had contracted. Mayor, etc., v. Second Avenue R. R. Co., 102 N. Y. 572, 7 N. E. 905, 55 Am. St. Rep. 839.

When defendant had refused to proceed with the work, it became plaintiff's duty to proceed with reasonable and usual diligence to procure the work to be done as cheaply as possible, so as to limit the claim for damages. Whether or not he did so proceed was a question for the jury. It was fairly submitted to them, and we find no reason in the evidence to question the justness of their conclusion. The plaintiff was under no obligation, as we consider, to accept defendant's offer to do the work at an advance of $38,000. When that offer was made, plaintiff was in the position of claiming, and with reason, that defendant was bound to do the work under his former proposal. At the very least, that was then a debatable claim, not without a plausible basis. Plaintiff expressed his complete willingness to accept a new proposal from defendant at a higher figure, conditioned only upon the mutual understanding that such acceptance should not be construed as a waiver of any right which he might then have under the earlier proposal and acceptance. This was a reasonable condition, and one which it was unreasonable for defendant to refuse, and his submission of a new proposal without reference to the proposed conditions must be deemed a refusal to accede to it.

No other question presented by the appeal seems to call for extended discussion.

The judgment and order should be affirmed, with costs. All concur.