LAWRENCE SAVAGE, Plaintiff, *v.* JOHN J. WEIGEL, Defendant.

Supreme Court, Erie County, December 30, 1926.

**Vendor and purchaser — specific performance — plaintiff gave check to defendant's agent and took receipt which recited that contract was to be drawn by agent and approved by plaintiff's attorney — receipt is not sufficient memorandum to constitute valid enforcible contract — defendant properly terminated negotiations in view of plaintiff's unreasonable delay in carrying out agreement.**

A receipt, given to plaintiff by defendant's agent, in return for a check covering the down-payment on the sale of real property to plaintiff, which, after reciting payment and describing the property to be sold contained a phrase to the effect that the contract was to be drawn by said agent and approved by plaintiff's attorney, is not a sufficient memorandum to constitute a valid contract which may be specifically enforced, since its phraseology indicates that a more formal agreement was to be drawn.

Assuming that said receipt did constitute a legal agreement to sell and convey the property, defendant properly terminated the negotiations where it appears that plaintiff unreasonably delayed carrying out said agreement for a period of more than two months.

ACTION for the specific performance of an alleged contract for the purchase and sale of certain real property located in the city of Buffalo, N. Y.

*Justin C. Morgan,* for the plaintiff.

*Arthur A. Ward,* for the defendant.

WHEELER, Referee. The plaintiff and Mr. Eckhert, the agent of the defendant, had negotiations for the sale of the property in question. As a result of these negotiations, on the 4th of August, 1926, the plaintiff gave the agent his check for $100, and took the following receipt:

" No. 83.                              *August* 4, 1926.

" No commission to be paid to Mr. Savage. Received of Mr. Lawrence Savage one hundred 00/100 dollars check on $a/c$ sale of 822 E. Delavan Ave. for $1,350. Subject to $10,000 in 2 mortgages, balance cash. Contract to be drawn by me and approved by Frank Pfalzer.

" $100.00.                    HARRY J. ECKHERT,
                              *" Agent for John J. Weigel."*

The receipt should have read $13,500, instead of $1,350.

The plaintiff stands on this paper as entitling him to maintain this action for a specific performance. The defendant contends it is insufficient in law to constitute a valid and binding contract.

If the paper signed had omitted the words: " Contract to be drawn by me and approved by Frank Pfalzer," the referee is of the opinion that it would have been a sufficient memorandum to have met the requirements of the statute and constituted a valid and binding contract. It was manifest, however, the paper signed was not treated, or intended, as a final contract between the parties, for by its very terms it provides such a contract was to be drawn and " approved by Frank Pfalzer," who acted as attorney and counsel for Mr. Savage.

This view is emphasized by the evidence given on the trial of this action as to what was said and done leading up to the signing of the receipt given. In those preliminary negotiations the time of closing the deal was discussed and agreed on, and an agreement reached as to the apportionment of rent and taxes, which matters it was expected should be incorporated into the formal contract to be proposed. On the same day that the receipt was given, the agent drew and submitted to Mr. Pfalzer the proposed contract. It was in the usual form of land contracts, embodying the terms omitted in the temporary receipt, and fixing the date for closing the deal, to wit, August 25, 1926.

Although not then approved by Mr. Pfalzer, it was long after so approved by him except as to the date of closing, which was changed from August twenty-fifth to October fifteenth. Consequently it cannot be claimed the proposed contract was in any way improper or objectionable in its terms, unless it was as to the date of closing the deal. The defendant, however, declined

to accept the modification in the proposed contract and never signed it.

In view of these facts, the referee is of the opinion that the minds of the parties never met, and the paper signed on August fourth is to be treated rather as a receipt than a contract embodying the agreement made, or to be made. This paper shows on its face that a further agreement was to be drawn and executed, and we think the defendant had a right to insist that should be done. As was said by Judge Selden in the case of *Pratt* v. *Hudson River Railroad Co.* (21 N. Y. 305, 308): "As both the advertisement on the part of the company, and the proposition made by the plaintiffs, expressly contemplated that the contract for the work should be reduced to writing and executed by the parties, until that was done, the contract to let the work cannot be said to have been consummated."

It is undoubtedly the law that parties may by negotiations make a valid contract, which is enforcible by either, and its validity is not necessarily affected because of a stipulation to reduce the contract to a more formal agreement. (*Peirce* v. *Cornell*, 117 App. Div. 66, 69; *Sanders* v. *Pottlitzer Bros. Fruit Co.*, 144 N. Y. 209; *Pratt* v. *Hudson River Railroad Co.*, 21 id. 305; *Brauer* v. *Oceanic Steam Navigation Co.*, 77 App. Div. 407.)

Where this rule of law is invoked, "the test is whether or not the proposition by one party and its acceptance by the other shows that the minds of the parties met as to the terms of the contract, leaving no essential term to future agreement." (*Peirce* v. *Cornell*, 117 App. Div. 66, 70; *Franke* v. *Hewitt*, 56 id. 497, 504; *Berman Stores Co.* v. *Hirsh*, 240 N. Y. 209, 214.) Where, however, the Statute of Frauds, as in the case of a contract for the sale of land, requires the agreement, to be valid, shall be in writing, then the agreement must not rest in parol, but the written memorandum must express the whole and entire agreement. (*Mentz* v. *Newwitter*, 122 N. Y. 491.)

There is another rule of law having a bearing on the disposition of this case, to the effect that, where parties to a negotiation decide to have a formal written agreement executed, it is strong evidence that the prior negotiations are not final or binding. (*Franke* v. *Hewitt*, 56 App. Div. 497, 503; *Bryant* v. *Ondrak*, 87 Hun, 477; *Brown* v. *New York Cent. R. R. Co.*, 44 N. Y. 79.)

Applying these rules to the receipt of August fourth, we are of the opinion that that paper cannot be treated as a final and conclusive agreement. It omitted many elements which go into and form a part of an ordinary contract for the purchase and sale of real property; such as the date of closing the deal, the character

of the deed to be given, the furnishing of abstracts of title, the apportionment of taxes and rents, the giving of possession, and things of that kind. Some of these very things were the subject of discussion in the oral negotiations at the time the check for $100 was given and the receipt drawn. Indeed the very receipt shows the formal contract to be made was open to further agreement as to its form and terms.

For these reasons, the referee is of the opinion it cannot be held that the minds of the parties ever finally met, or that the receipt given embodied all the terms of the oral agreement made.

As further bearing on this question, see the case of *Hefford* v. *Lichtman* (116 Misc. 692), decided by the writer of this opinion when a justice of this court. (See, also, the following cases: *Cohn* v. *Smarr*, 214 App. Div. 589; *Weinberg* v. *Greenberger*, 47 Misc. 117; *Cohen* v. *Champagne*, 183 N. Y. Supp. 76; *Becker* v. *Rothschild*, 141 id. 528; *De Salvo* v. *Faerber, Silberman & Co.*, 189 id. 147.)

Let us assume, however, for the purposes of the argument, that the receipt of August fourth did constitute a legal and valid agreement to sell and convey the property in question. It will be noted this receipt specified no time for closing the deal. Under such conditions it follows the plaintiff had a reasonable time in which to carry out his agreement. Did he carry out, or agree to carry out, his agreement of purchase within a reasonable time, or was he guilty of such delay and laches as justified the defendant in refusing to proceed further with the deal?

The evidence shows the proposed formal contract was submitted to Mr. Pfalzer on August fourth. Mr. Pfalzer was about to go on his vacation, and stated he was unable to give the matter attention. He went. On his return, when urged to approve and get the contract signed by Savage, he refused to do so without having an opportunity to examine the abstract, and advised his client not to sign. The defendant promised to furnish the abstract as soon as the contract was signed, and urged signing, although granting some extensions. Finally on September sixteenth the defendant became tired of delay, and through his agent wrote the plaintiff, saying, in substance, that he considered the deal off, terminating negotiations, and returned the check for $100. After this had been done, it seems the plaintiff finally signed the proposed contract with date of closing changed to October 15, 1926, and tendered the agreement so signed to the defendant, who refused to execute on his part.

We are of the opinion that the plaintiff was guilty of unreasonable delay in carrying out the contract, if such it may be termed, and

Surrogate's Court, Delaware County, February, 1927.       [Vol. 128

that the defendant was under the circumstances justified in refusing to proceed further.

Certainly the defendant had the right to expect reasonable expedition on the plaintiff's part, and the plaintiff could not expect the defendant to hold his property tied up by a contract indefinitely. The circumstances did not justify the long delay had. The defendant seems to have recognized the necessity for action, and asked extensions from time to time, which were given, but the time came when further extensions were refused, and, after a date fixed by the defendant, the deal was called off, of all of which the plaintiff had fair notice.

We, therefore, reach the conclusion that, assuming a valid contract had been made on August fourth, nevertheless the plaintiff lost his rights to enforce it by his unreasonable delay in carrying out the agreement on his part.