(107 App. Div. 482.)

MARTIN v. WERMANN.

(Supreme Court, Appellate Division, Second Department.    September 29, 1905.)

1. TRIAL—DISMISSAL AND NONSUIT—DISMISSAL ON MERITS—PROPRIETY.
    Where a case is tried before the court and a jury, and is not submitted
    to the trial court for decision on the merits, it should be submitted
    to the jury, unless plaintiff's proof entirely fails, in which event a non-
    suit, and not a dismissal upon the merits, should be granted.
        [Ed. Note.—For cases in point, see vol. 46, Cent. Dig. Trial, § 360.]

2. SAME—QUESTIONS FOR JURY—WEIGHT OF EVIDENCE.
    The weight and credibility of evidence is for the jury.

3. BROKERS—RIGHT TO COMMISSIONS.
    The production of a responsible purchaser on terms satisfactory to
    the employer at the time a contract of brokerage is entered into is suffi-
    cient to entitle the broker to his commissions, and he cannot be deprived
    of his right thereto by a change of mind as to terms on the part of the
    employer.

Appeal from Kings County Court.

Action by Frank P. Martin against Herman Wermann.   From a
judgment dismissing the complaint on the merits, plaintiff appeals.
Reversed.

Argued before HIRSCHBERG, P. J., and BARTLETT, WOOD-
WARD, JENKS, and RICH, JJ.

Frank P. Martin in pro. per.
Adolph Kiendl, for respondent.

HIRSCHBERG, P. J.   The appeal is from a judgment dismissing
the complaint upon the merits at the close of the plaintiff's case.   The
case was not submitted to the learned trial court for a decision upon the
merits, and as it was tried before the court and a jury it should have been
submitted to the jury for determination, unless the plaintiff's proof en-
tirely failed, in which event a nonsuit should have been granted.

There was evidence requiring submission of the case to the jury.
The action is for damages for the violation of an agreement made by the
defendant for the sale of real estate.   On March 17, 1903, the defendant
executed and delivered to the plaintiff a written agreement or option
for the sale of the real estate as follows:

"I hereby give Frank P. Martin exclusive option to sell the premises north-
east corner Broadway and Eldert street, Brooklyn, N. Y., being about 40 feet
front and rear, by about 80 feet in depth on each side, until March 27, 1903,
for the net consideration of thirty-seven thousand dollars ($37,000.00).  Any price
paid for said property above that amount to be said Martin's in lieu of com-
mission.  I am positively to pay no commission whatsoever for the sale of
said property at the price of said thirty-seven thousand dollars ($37,000.00)."

At the time of the execution and delivery of this document it was
agreed orally between the parties that on the sale the defendant should
receive at least $10,000 in cash, and that he should take a mortgage for
the balance of the purchase money, to run two or three years at 5 per
cent.

The evidence given at the trial was sufficient to establish the follow-
ing facts:   On Saturday, March 21, 1903, the plaintiff procured a re-

sponsible purchaser who was ready to sign a contract to buy the property for $39,000, to pay $1,000 in cash that day, and to close the contract in 60 days, by paying $13,000 then and giving a purchase-money mortgage for $25,000 at 5 per cent. for three years.   The prospective purchaser and the parties met, the terms were stated, but the defendant objected to the delay in closing the contract, saying that it must be done before the 1st of May.   He made no other objection to the terms. The proposed purchaser was unwilling to close the purchase by May 1st, and the deal fell through.   The plaintiff stated that he would procure another purchaser, and the defendant told him to deal with his lawyer, who would attend to the matter for him.   He did procure another responsible purchaser on that day at the same price and conditions, but who was ready and willing to close the sale in 30 days, and he informed the defendant's lawyer of the fact over the telephone.   He testified:

"I said: 'Mr. Kiendl, I have another party.   I have procured another party who will close up the sale in 30 days.'   I said: 'Will you close it on Monday morning at half past 10?'   He said: 'Yes.'   I asked him: 'Will you draw the contract up?'   He replied:   'I will do it.'   I said:   'Will you have Mr. Wermann there?'   He said:   'I will.'   I said: 'Now, make a memorandum of the terms: One thousand dollars cash; $25,000 in mortgage to run for three years.'   He said: 'I will be ready.' "

On Monday the plaintiff went to the lawyer's office, followed shortly after by the second purchaser, and was there at once informed by the lawyer that the matter could not be closed because the defendant had been there that morning, saying that he would now require the payment of $5,000 on the signing of the contract.   The lawyer added:

"Mr. Wermann has been here this morning, and he has changed his mind. He wants $5,000 on the signing of the contract."

The statement that the defendant's demand for a present payment of $5,000 had resulted from the fact that he had changed his mind was corroborated by two apparently disinterested witnesses.

The evidence was sufficient to justify the jury in concluding that the defendant was originally content with a payment on account of $1,000, and, in the absence of a claim that either purchaser was irresponsible, they might also have reasonably concluded that the defendant's change of mind was capricious, or influenced by the belief that his property would find a ready sale at the sum of $39,000, and that he could, by refusing the plaintiff's customers, save the $2,000 which the plaintiff would otherwise receive.   It is true that there was some evidence tending to show that the defendant had all along demanded $5,000 as the initial payment; but its weight and credibility were for the jury, and not for the court.   I do not think a nonsuit could be sustained upon the proof; but it is clear that the action of the trial court in destroying the plaintiff's cause of action by a judgment against him on the merits was wholly unwarranted.   The case is not different in principle from what it would have been, had the plaintiff engaged to find a third purchaser on the new terms, and had he, on doing so, been told that the defendant would require payment of all the purchase money, exclusive of the mortgage, on the signing of the contract.   The pro-

duction of a responsible purchaser on terms which are satisfactory to the employer at the time the contract of brokerage is entered into is sufficient to entitle the broker to his commissions, and he cannot be deprived of his right to them by a mere change of mind on the part of the vendor. Moses v. Bierling, 31 N. Y. 462, 464; Duclos v. Cunningham, 102 N. Y. 678, 6 N. E. 790; Gilder v. Davis, 137 N. Y. 504, 33 N. E. 599, 20 L. R. A. 398; McQuillen v. Carpenter, 72 App. Div. 595, 76 N. Y. Supp. 556.

The cases on the authority of which the trial court rendered the decision herein are not in conflict. In Pullich v. Casey, 43 App. Div. 122, 59 N. Y. Supp. 298, the demand for the larger payment was asserted at the very beginning of the negotiations, and, although modified in the course of interview between the parties, the court held that the vendor was at liberty to return to his original demand at any time before the negotiations were completed. In Sibbald v. Bethlehem Iron Company, 83 N. Y. 378, 38 Am. Rep. 441 the rule herein contended for was distinctly recognized; Judge Finch saying (page 383 of 83 N. Y. [38 Am. Rep. 441]):

"If the efforts of the broker are rendered a failure by the fault of the employer, if capriciously he changes his mind after the purchaser, ready and willing, and consenting to the prescribed terms, is produced, * * * then the broker does not lose his commissions."

The judgment should be reversed. All concur; JENKS, J., in result.