TANENBAUM et al. v. BOEHM et al.

(Supreme Court, Appellate Division, First Department. June 5, 1908.)

1. APPEAL AND ERROR—REVIEW—HARMLESS ERROR—DIRECTION OF VERDICT—IMPROPER ORDER.

Where both parties at the close of the whole case moved for the direction of a verdict, thus conceding that there were no issues of fact to be submitted to the jury, and the court stated that he would grant defendants' motion, dismissing the complaint on the merits, and plaintiffs did not ask to go to the jury, they suffered no substantial harm by the court's error in dismissing the complaint, instead of directing a verdict as requested, and the case will be treated on appeal as if the court had made the proper order in response to defendants' motion.

2. BROKERS—RIGHT TO COMMISSIONS—MEETING OF MINDS—SUBSEQUENT CHANGE OF MIND.

Where brokers, employed by the owners of certain property to procure a lessee thereof for a long term, brought to the owners a proposed tenant who was ready, able, and willing to lease the premises for such a term, and after long and repeated negotiations between the parties, their minds met upon every term and condition then propounded by the owners, and both parties stated that the transaction was then and there closed, the brokers were entitled to their commissions, though the lease was never executed; the owners having subsequently propounded unreasonable terms, which they had not disclosed before, either to the brokers or the proposed tenant, and to which the proposed tenant refused to accede.

McLaughlin and Ingraham, JJ., dissenting.

Appeal from Trial Term.

Action by Leon Tanenbaum and another, copartners, etc., against Abraham Boehm and another for commissions. From a judgment of dismissal and an order denying a new trial, plaintiffs appeal. Reversed, and new trial ordered.

Argued before INGRAHAM, McLAUGHLIN, HOUGHTON, CLARKE, and SCOTT, JJ.

Strouse & Strauss (Ernest Hall, of counsel and Alexander L. Strouse, on the brief), for appellants.

George L. Shearer (Edward W. Hatch, of counsel) for respondents.

CLARKE, J. This is an action to recover the sum of $22,300 as commissions for negotiating a lease of real estate situate at the southeast corner of Thirty-Fifth street and Fifth avenue, New York, owned by defendants. At the close of the case the sole question of fact which at that time existed was withdrawn by a concession of the defendants; their counsel stating:

"If there is any liability against anybody here, the defendants are liable. Counsel for the Plaintiffs: On that concession, I move for a direction of a verdict in favor of the plaintiffs for the amount claimed. Counsel for the Defendants: I move for the direction of a verdict upon the merits dismissing the complaint. The Court: I will grant the motion of the defendants dismissing the complaint on the merits."

The appellants contend that the dismissal of the complaint on the merits at the close of the whole case was error which alone requires a reversal of this judgment. It is apparent from this record that the appellants have not been harmed. Both sides moved for the direc-

tion of a verdict, thereby conceding that there were no issues of fact to be submitted to the jury. The learned trial court said, "I will grant the motion of the defendants"; but added, inadvertently, as we think, "dismissing the complaint upon the merits." What he should have done was to have directed a verdict for the defendants. After he had so ruled, the plaintiffs did not ask to go to the jury, but contented themselves with an exception to the direction, a motion for a new trial, and an exception to the denial of that motion. The plaintiffs were deprived of no rights. If they had asked to go to the jury and that motion had been denied, they would have been in a position to have raised the question; but they took the position then, and they take it now, that there remained no dispute about the facts, and that upon the conceded facts they were entitled to judgment. So that, no substantial harm having come to them, we shall treat this case as if the court had made the proper order in response to the defendants' motion for the direction of a verdict, and consider whether the record sustains such a disposition of the case.

The question is sharply presented in this case whether, upon the facts proved, the plaintiffs, who are real estate brokers, had earned their commissions. It is undisputed that the plaintiffs were employed by the defendants to procure a tenant for a long term for the property, which had a frontage of 85 feet 9 inches on Fifth avenue and of 150 feet on Thirty-Fifth street; that the plaintiffs procured a proposed tenant; that, after a considerable amount of negotiation, they brought the proposed tenant and the defendants together, and that the terms and conditions of the proposed lease were the subject of long and repeated negotiations between them; that the lease was to be for 23 years, beginning the 1st day of May, 1906, with the privilege of two renewals for periods of 21 years each. The lessees were to pay a rental for the first two years of the term of $65,000 per annum and for the remaining 21 years $100,000 per annum, net rentals payable quarterly. If the lessees availed themselves of the renewal, the rental was to be at 4 per cent. per annum on the appraised value of the property. In the event of no renewal being agreed upon, the building was to be purchased at an appraised value. The lessees were to commence within three years the erection of a building for commercial purposes which was to be six stories in height, not less than 85 feet, capable of bearing two additional stories. The store or first floor was to be not less than 17 feet in height and the lofts each not less than 12 feet, measured from the ceiling to the floor. The building was to cover the entire Fifth avenue front, and to have a depth as great as the law permitted. It was to contain a basement and subbasement, and be fireproof throughout. The beams were to be of steel or iron, and the building was to be constructed of such strength as to comply with the laws relating thereto. The building was to contain a sufficient number of elevators, to be provided with steam heat, electric light, and plumbing; the trim was to be of wood, and all materials to be used were to be high-class grade. It was agreed that the tenant should pay the taxes, assessments, water rates, and other charges. It was agreed that the lease would be subject to an existing mortgage of $1,425,000 or $1,450,000, bearing 4½ per cent.

interest per annum. In case the existing mortgage were called, the lease was to be subordinated to a new mortgage of not more than $1,500,000, bearing interest at the rate of 4½ per cent. per annum. During the first two years of the term, it was agreed the lessee was to take the premises subject to the existing leases, one of $49,500 per annum which ran to May 1, 1906, and the other of $22,500 per annum, which ran to May 1, 1908. On the 14th of December, 1905, plaintiffs, the defendants, accompanied by their counsel, and the proposed tenant, accompanied by his counsel, met at the office of the defendants, and after the foregoing terms had been agreed upon, many of them arrived at through continued concessions by the proposed tenant, the question of security to be given by the tenant for the erection of the building came up. The tenant, Mr. Ball, had offered a mortgage of $50,000 on his residence. The defendants wanted $100,000, which Mr. Ball refused to give. It was finally agreed that Mr. Ball should give a $75,000 mortgage upon his residence as such security. Then occurred the following, as testified to by one of the plaintiffs:

"Then came up another question: 'Mr. Ball, would you pay the first quarter's rent upon the signing of the lease?' Mr. Coon and Mr. Ball said that that would be agreeable. 'Now, are there any more questions?' Mr. Ball said: 'Gentlemen, I am getting tired, and it is late, and I would like to dispose of this thing one way or the other, or wipe it off the slate.' Mr. Putzel, for the defendants, said: 'If you will give us time, I think we can get together. Let us adjourn.' 'No,' he said, 'if I cannot do it now, I do not know as I will talk about it any more.' They made another proposition. This is the language I recall: 'Mr. Ball, will you pay the last quarter of the first two years in cash and a quarterly rent when due thereafter, the first rent commencing the 1st day of August?' Mr. Ball said: 'That is a matter of about $2,000 interest. Gentlemen, will you accede to my terms, and are there no further questions to be disposed of, and will this end the transaction if I concede that payment?' 'Yes.' 'Then I accept your terms, gentlemen, and the transaction is closed.' Mr. Strauss, one of the plaintiffs, said, 'Shake hands, gentlemen,' and they all shook hands; and Mr. Strauss said: 'Mr. Putzel and Mr. Rogers, will you please draw a preliminary memorandum agreement?' And they said that it is too late; it is after six o'clock. Mr. Ball said: 'Do I understand this transaction closed?' 'Yes.' He said, 'Will you have the lease prepared?' to Mr. Putzel, and he said, 'Yes,' and 'will you submit the draft to my attorney, Mr. Rogers?' And he said, 'Yes.' And 'When will you have them?' 'I think in two or three days.'"

Plaintiffs claim that then and there their commissions were earned; that they had brought a proposed tenant to the proposed lessors ready, willing, and able to take the proposed lease upon the terms and conditions as propounded by the defendants and agreed upon as the result of continued negotiations between them; that the transaction, as said between themselves, was then and there closed; that after this last request of the defendants, which involved the matter of $2,000 interest, the proposed tenant had said to them, "Will you accede to my terms, and are there no further questions to be disposed of, and will this end the transaction if I concede the payment?" The defendants replied, "Yes"; and the tenant said: "Then I accept your terms, gentlemen, and the transaction is closed."

It is contended that the brokers' work was done; that there had been a complete meeting of the minds upon all the essential terms and conditions of the transaction; that everything spoken of and demand-

ed by the defendants had been conceded and agreed to by the tenant; that the brokers' status and rights became then and there fixed. Their work was over. All that remained to be done was to put in formal and written shape the contract which should embody the numerous terms and conditions theretofore agreed upon. The lease was never made. The parties never did sign the contract. The subsequent disagreement arose from the insistence of the attorney for the defendants in inserting in the proposed agreement a clause which required the tenant to complete the building which he proposed to erect, which is conceded would have cost about $300,000, upon a day certain, and gave the right to the defendants to recover possession of the property by summary dispossess proceedings if the building were not fully completed upon the day fixed. There had been nothing said in the terms given to the broker, nor during the negotiations between the principals in regard to fixing a time for the full completion of the building, nor as to the remedy in default of such completion of summary dispossess proceedings. The tenant refused, and his counsel refused to allow him to sign any such agreement. He took the ground that the security which he had agreed to give of a $75,000 mortgage upon his private residence and the ordinary remedies at law by an action of ejectment constituted a full protection for any rights which the defendants might have; that to ask him to imperil an expenditure in the neighborhood of $300,000 by a provision for a forfeiture if the building were not fully completed at a day fixed, when no one could foresee what contingency might arise in the future by way of strikes or inability to procure necessary material, or otherwise, was so unreasonable a demand, brought forward as it was for the first time after the transaction had been agreed to be entirely closed and all of the defendants' terms had been acceded to and agreed upon, that he could not yield in a matter which might be so vital to his own interests. The respondents take the position that until each of the minute and particular terms of the written agreement were consented to by the formal signing of the instrument that the plaintiffs acquired no right to a commission, and that notwithstanding that all the essential terms of the contract had been agreed upon, and notwithstanding that nothing had been said of these new and additional requirements, they were entitled to insist upon them, and, if not acceded to the plaintiffs had not earned their commissions, and are remediless.

Of course, the broker's reward is contingent upon success. No matter how much time or how much effort he may put forth to accomplish a desired result, if he do not produce a customer ready, willing, and able to take upon the terms propounded by the seller, his time has been wasted and his labor gone for naught. I understand that both parties acceded to this proposition. The defendants' claim is that because the parties failed to sign a lease their minds never did meet. In Mooney v. Elder, 56 N. Y. 238, Grover, J., said:

"We have seen that the plaintiff was entitled to his commission upon the production of a purchaser ready and willing to purchase the property upon the terms fixed by the defendant. * * * Plaintiff was entitled to his commission upon the production of a purchaser ready and willing to purchase the property, although through the fault of the defendant a sale never was effected."

In McQuillen v. Carpenter, 72 App. Div. 595, 76 N. Y. Supp. 556, it was held that the plaintiff, who had procured a customer able and willing to buy and to pay for the property the price which the defendant demanded, was entitled to his commission, although when the parties met for the purpose of executing a contract they failed to do so because of a requirement on the defendant's part that the contract should contain a provision permitting her to pay a small forfeiture in lieu of delivery of the deed should she so elect. In Sibbald v. Bethlehem Iron Co., 83 N. Y. 378, 38 Am. Rep. 441, it was said:

"If the efforts of the broker are rendered a failure by the fault of the employer; if capriciously he changes his mind after the purchaser ready and willing, and consenting to the prescribed terms, is produced—* * * then the broker does not lose his commissions, and that upon the familiar principle that no one can avail himself of the nonperformance of a condition precedent who has himself occasioned its nonperformance."

In Martin v. Wermann, 107 App. Div. 482, 95 N. Y. Supp. 284, the court said:

"The production of a responsible purchaser on terms which are satisfactory to the employer at the time the contract of brokerage is entered into is sufficient to entitle the broker to his commissions, and he cannot be deprived of his right to them by a mere change of mind on the part of the vendor."

The right of the broker does not depend upon the execution of the completed contract. He must have failed to have brought the minds of the parties together. I think this record establishes the fact that the minds of the parties did meet upon every term and condition propounded by the defendants, and that both parties regarded and stated that the transaction was then and there closed, and that the failure to subsequently consummate was entirely due to the defendants propounding new and unreasonable terms which had never been disclosed theretofore, either to the brokers or to the tenant. The brokers, having done all that they were required to do, had earned their commissions.

It follows, therefore, that the judgment and order appealed from should be reversed, and a new trial ordered, with costs to appellant to abide the event.

HOUGHTON and SCOTT, JJ., concur.

McLAUGHLIN, J. (dissenting). I do not disagree with Mr. Justice CLARKE as to when a broker becomes entitled to commissions. The law on that subject is thoroughly settled in this state, and the only difficulty is applying it to the facts in each case. That is the trouble in the case now before us, and I disagree radically with him as to the application of the law to the conceded facts. The broker produced a proposed tenant, negotiations between whom and the defendants proceeded to such an extent that they orally agreed upon many of the material terms of the lease; but it is perfectly obvious that all of the terms were not agreed upon, and this must have been understood by all the parties when they separated on the 14th of December, 1905, for the purpose of having a proposed formal lease drafted and submitting the same to the attorney for the proposed tenant. All that their negotiations, in a legal effect, amounted to up to this time was

an agreement to make a lease, provided they could agree upon the terms. Here was a very valuable piece of real estate, which was to be leased for a term of 23 years, with an option to the tenant to renew for 42 years more, making 65 years in all. The rent which the tenant was to pay for the first 23 years was $2,230,000, and he also within three years from the beginning of the term was to commence the erection of a building at a cost of not less than $300,000. To say that the oral negotiations which took place resulted in the meeting of the minds of the parties on the terms of the lease—which alone entitled the broker to commissions—seems to me to be in direct hostility to all the authorities bearing on the subject, including those cited in the prevailing opinion.

It does not appear that any suggestion was made in the oral negotiations as to when the building was to be completed, if it were to be insured, and, if so, who was to pay the insurance, if destroyed by fire during the term of the lease what was to be done, or what were to be the rights of the parties if the tenant failed to perform. Many other details which good business judgment would suggest as being necessary to be inserted in a lease for so long a term and involving property as valuable as this were not even mentioned. The parties did not agree as to all the terms of the written lease, especially as to what remedy the owner should have of regaining possession if the tenant did not erect the building within the time proposed, the tenant insisting that the owner should have only a remedy in ejectment, but not in summary proceedings, and to this the owner would not agree. There was no capricious withdrawal from a bargain by the defendants, nor was there any agreement ever reached. The efforts of the broker were ineffectual, the minds of the parties never met, and a contract was never made. The broker, therefore, was not entitled to commissions, and the court properly directed the verdict.

The judgment appealed from should be affirmed.

INGRAHAM, J., concurs.