RICE v. NEUMAN.

(Supreme Court, Appellate Term. March 5, 1909.)

1. BROKERS (§ 86*)—ACTION FOR COMPENSATION—SUFFICIENCY OF EVIDENCE.
  In an action for commissions for procuring a tenant for defendant, evidence *held* not to show who the tenant was that plaintiff claimed to have procured.
  [Ed. Note.—For other cases, see Brokers, Cent. Dig. § 116; Dec. Dig. § 86.*]

2. BROKERS (§ 60*)—RIGHT TO °COMPENSATION—FAILURE TO COMPLETE CONTRACT.
  So long as it was uncertain who was to be the lessee of property which a broker was attempting to lease, there could be no meeting of the minds of the owner and any lessee, so as to constitute a binding contract to lease, so as to entitle the broker to commissions on the deal.
  [Ed. Note.—For other cases, see Brokers, Cent. Dig. § 91; Dec. Dig. § 60.*]

3. BROKERS (§ 60*)—RIGHT TO COMPENSATION—FAILURE TO COMPLETE CONTRACT.
  Where important details of the terms of the lease were left for future agreement, there could be no valid contract to lease until such agreement

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

was fully consummated by the lessor and the proposed lessee, so as to entitle a broker to commissions for procuring the tenant for the lessor.

[Ed. Note.—For other cases, see Brokers, Cent. Dig. § 91; Dec. Dig. § 60.*]

4. BROKERS (§ 82*)—ACTIONS FOR COMMISSIONS—ISSUES AND PROOF.

Where a broker based his action for commissions for procuring a tenant upon an entire contract made by defendant with the alleged tenant on June 14th, he must prove that very contract by clear and certain evidence.

[Ed. Note.—For other cases, see Brokers, Cent. Dig. § 101; Dec. Dig. § 82.*]

Appeal from City Court of New York, Trial Term.

Action by Hyland P. Rice against Daniel Neuman. From a judgment for plaintiff, and from an order denying a new trial, defendant appealed. Reversed, and new trial ordered.

Argued before GILDERSLEEVE, P. J., and MacLEAN and DAYTON, JJ.

Franc, Neuman & Newgass (Emil Goldmark and James J. Franc, of counsel), for appellant.

Wales F. Severance, for respondent.

GILDERSLEEVE, P. J. Plaintiff brought this action as a broker, to recover for commissions alleged to have been earned by his assignor in obtaining a tenant for the defendant. The allegations of the complaint are definite and certain in some respects, but obscure in others. It is alleged therein that plaintiff's assignor was retained to procure a tenant "upon certain terms and conditions," which are not stated. It is further alleged that the contract was to procure a "tenant," whose name is not disclosed. The plaintiff's assignor is a realty company, with which company the plaintiff was connected at the time of the transaction involved herein. The defendant was the lessee of a building at No. 375 Fifth avenue, this city, holding a lease having nearly 10 years to run. At this time there was great activity in leasehold transactions in the vicinity of the defendant's property, and many other brokers outside of the plaintiff's company were negotiating with the defendant. The plaintiff's case rests wholly upon a conversation had between himself, the defendant, and one Garfinkel, which is as follows:

"I saw Mr. Neuman in June, 1905, at his building, No. 375 Fifth avenue. Mr. Garfinkel was with me. On that occasion we had a conversation in regard to Mr. Garfinkel renting Mr. Neuman's building. Mr. Garfinkel asked Mr. Neuman what rent he would take for it, and Mr. Neuman said he would take $17,500 a year. Mr. Garfinkel said he could not use the building in its condition, as it was not suitable for his business, and asked Mr. Neuman if he would make alterations in the building. Mr. Neuman said that would depend on what he wanted done. Mr. Garfinkel said he would have to look through and see what he required to have done, which he did. Mr. Neuman went with him through the building. I accompanied them. After going through the building Mr. Garfinkel told him what he would have to have done. They estimated it roughly to cost about $20,000. Mr. Garfinkel asked Mr. Neuman how much rent he would want if he (Neuman) made the alterations. Mr. Neuman said he would have to get $20,000 per annum for the building. Mr. Garfinkel said he had an associate in this matter, in his business enter-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

prise, and would want to talk to him in regard to the building and alterations, and asked Mr. Neuman if he would give him a week's time to consider it, and give him an option at $20,000 a year, including the improvements, for a week. Mr. Neuman said he would."

This conversation took place on June 14th, and two days later the plaintiff, Garfinkel, and one Vought called upon defendant to accept said alleged option. The defendant, it is claimed, then stated that he had decided not to go into the building operation and make the alteration. At this conversation, and for the first time, one Peller appeared. Up to this time, it will be observed, the defendant had not known the name of the "associate" of Garfinkel, and nothing had been said about the responsibility of Garfinkel, or as to the particulars of the proposed alterations, the cost thereof being merely estimated at a lump sum of $20,000, or as to the security to be given, and many other essentials entering into a lease. The following appears in the record as to what occurred after it is claimed that the defendant refused to make the alterations in the building and to take $20,000 per year rent:

"Mr. Garfinkel telephoned to Mr. Peller and asked him to come up to the building. He told Mr. Peller Mr. Neuman's new proposition, and Mr. Peller said he did not want that proposition. He was willing to go into it on the terms Mr. Garfinkel had spoken of. This was said in the presence of Mr. Neuman at the building. He was willing to go in with Mr. Garfinkel and take the building on the terms proposed to them. He did not want to go into a building operation himself. He offered personally to guarantee the lease, and put up $20,000 on signing the lease. Mr. Neuman's son telephoned for his son, the lawyer—that is, Mr. Frederick Neuman, I think—and he came to the building in about half an hour."

It is perfectly clear that at the interview between the parties on June 14th nothing definite and determinate was settled upon. The theory of the plaintiff's recovery, based upon his complaint, is that he had brought a single proposed tenant to the defendant, who had been accepted by him as a subtenant upon terms fully agreed upon. This is not supported by the testimony. If anybody was introduced, it was two tenants, and as to these nothing certain was agreed upon. On cross-examination the plaintiff was asked:

"Q. Who was the tenant you claimed to have brought to Mr. Neuman for the premises No. 375 Fifth avenue? A. Mr. Garfinkel and Mr. Peller as his associate."

Again he swears, speaking of Mr. Garfinkel:

"I told Mr. Neuman that this was the tenant that Mr. Vought had been negotiating with for the past month to induce him to take his building."

It will be seen from the foregoing that the plaintiff himself was uncertain as to who the real tenant was to be. It appears that Garfinkel was a cloak buyer, employed in Washington, D. C. He was not engaged in any business, and nothing is shown as to his financial responsibility. Taking the testimony as a whole, and assuming that the plaintiff's testimony is true, it is impossible to determine who the subtenants were to be at the time of the giving of the alleged option to Garfinkel. The defendant was entitled to know who the proposed lessees were with whom he was to enter into a contract, and, so long

as there was an uncertainty as to the lessees, there was no meeting of the minds of the parties essential to constitute a binding contract.

It is not claimed that the defendant had any knowledge of the existence of Peller, or that his name had been mentioned, when the defendant had expressed his unwillingness to go into a building operation; and it is only then that Peller was introduced either as "associate," associate tenant, guarantor of the lease, or in some other capacity, evidently for the purpose of forcing the defendant into some agreement which he was unwilling to make. The most that can be said is that the plaintiff, Garfinkel, and the defendant had a conversation, at which time the defendant stated in general terms upon what conditions he would be willing to sublet the premises, but that the important details were left for future meeting and agreement, if one could be arrived at, and not until such agreement was fully consummated could the plaintiff earn commissions. Tannenbaum v. Boehm, 126 App. Div. 731, 111 N. Y. Supp. 185.

We are asked to hold, upon the plaintiff's testimony, that a business man, himself liable to his own landlord for rents equaling nearly $100,000, entered into a contract to sublet to an entire stranger, of whose financial standing he knew nothing, his premises, involving a payment by such stranger of an amount of rent aggregating the sum of $185,000, in a brief conversation without written memoranda, which conversation, taken as a basis for a contract, is indefinite, uncertain, and nebulous, and leaves undetermined and unfixed very many important and essential details. If this judgment is to be sustained upon the evidence given herein, a real estate owner or a leaseholder is at the mercy of any real estate broker with whom he may have had an interview respecting his property, if he has given any intimation or shown therein any desire to sell or sublet the same.

A reading of the record discloses that the plaintiff was forced upon cross-examination to attempt to prove his case upon a theory entirely inconsistent with the cause of action pleaded, namely, that there were two tenants, instead of one. I am convinced that he failed upon both. He based his cause of action upon an entire contract made on June 14th, and he must prove it by clear and certain testimony. The party upon whom the burden of proof rests is bound to prove every single circumstance which is essential to the conclusion in the same manner and to the same extent as if the whole issue had rested upon the proof of each individual and essential circumstance. In this the plaintiff failed.

There were also reversible errors in the charge, but sufficient has already been said to show the instability of the judgment.

Judgment reversed, and new trial ordered, with costs to appellant to abide the event. All concur.