TANENBAUM et al. v. BOEHM et al.

(Supreme Court, Appellate Division, First Department. December 30, 1909.)

BROKERS (§ 63*)—COMPENSATION—WHEN EARNED.

A broker employed by a landlord to procure a tenant, who procures a tenant who orally agrees to the conditions imposed by the landlord, is entitled to the commission, though no lease is executed because of new and unreasonable terms insisted on by the landlord.

[Ed. Note.—For other cases, see Brokers, Cent. Dig. § 95; Dec. Dig. § 63.*]

McLaughlin and Ingraham, JJ., dissenting.

Appeal from Trial Term, New York County.

Action by Leon Tanenbaum and another, copartners doing business under the firm name of L. Tanenbaum, Strauss & Co., against Abraham Boehm and another, doing business under the firm name of Boehm & Coon. From a judgment for plaintiffs entered on a directed verdict, and from an order denying a new trial, defendants appeal. Affirmed.

Argued before INGRAHAM, McLAUGHLIN, HOUGHTON, CLARKE, and SCOTT, JJ.

George L. Shearer (Edward W. Hatch, of counsel), for appellants.
Strouse & Strauss (Ernest Hall, of counsel, and Alex. Strouse, on the brief), for respondents.

CLARKE, J.   This is the second trial of this action.   Upon the first trial both sides, at the close of the case, moved for the direction of a verdict.   The court said:

"I will grant the motion of the defendants dismissing the complaint on the merits."

Upon appeal (126 App. Div. 731, 111 N. Y. Supp. 185) we considered the case as if the court had directed a verdict for the defendants, reversed the judgment, and ordered a new trial.   In our opinion we examined the facts, and, finding that there was no dispute of what had occurred up to the close of the interview between the owners, the proposed tenants, the brokers, and the several counsel on the 14th of December, 1905, when all the terms proposed by the defendants had been acceded to by the proposed tenants conceded to have been procured by the plaintiffs, and the parties to the transaction had declared the terms accepted, and the matter closed, and had shaken hands, held that the brokers' work was done, and their rights established.   We said:

"The right of the broker does not depend upon the execution of the completed contract.   He must have failed to have brought the minds of the parties together.   I think the record establishes the fact that the minds of the parties did meet upon every term and condition propounded by the defendants, and that both parties regarded and stated that the transaction was then and there closed, and that the failure to subsequently consummate was entirely due to the defendants propounding new and unreasonable terms which had never been disclosed theretofore, either to the brokers or to the tenant.   The brokers, having done all that they were required to do had earned their commissions."

The learned trial court, upon the second trial, at the close of the whole case, when both parties had moved for the direction of a verdict, deemed that the law of the case had been settled by this court, and granted the motion and directed a verdict for the plaintiffs.   The defendants asked to go to the jury upon all the questions in the case, and upon the question of whether the minds of the parties met upon an agreement of lease of these premises and duly excepted to the denial of that motion.

It does not seem necessary to restate the facts as set out in our former opinion.   The learned counsel for the appellants states in his brief that:

"All of the facts brought out at the first trial, as summarized in the prevailing opinion handed down on the former appeal, were established at the second trial."

If, then, we were right in holding that at the close of the interview on the 14th of December the minds of the parties had met and the brokers' commissions had been then earned, this judgment is right, because the somewhat elaborated testimony in this record of what occurred after that interview, in the attempt to get together upon the terms of the formal lease which was to be executed, in the course of which the transaction finally failed of consummation because of new and unreasonable terms insisted upon by the counsel of the de-

fendants which had not been submitted to the broker or to the proposed tenant, cannot affect the result.

If the brokers, upon the facts in this case, had not earned their commissions, I do not see how brokers would be entitled to commissions in any case until the contract evidencing the agreement had been signed, sealed, and delivered. I do not understand that to be the law.

The judgment and order appealed from should be affirmed, with costs to the respondents.

HOUGHTON and SCOTT, JJ., concur.

McLAUGHLIN, J. (dissenting). I dissent for the reasons stated in my opinion on the former appeal (126 App. Div. 738, 111 N. Y. Supp. 185), and also for the reason that, as it seems to me, but one conclusion can be drawn from the evidence adduced at the trial from which the present appeal is taken, viz., that the minds of the proposed lessors and lessees never met upon terms of a contract of lease, and that the plaintiffs did not procure or produce ready or willing to execute a lease upon the lessors' terms, for which reason the court erred in directing a verdict in favor of the plaintiffs. Both of the parties understood, when the negotiations for a lease were first begun, that such negotiations must result in a written agreement in order to be valid and binding. The plaintiff Tanenbaum testified:

"I knew that when negotiation for a lease was begun it must ripen into a written agreement in order to be valid. I knew, when these negotiations were being conducted, that, in order that Mr. Hall should have a lease, the ultimate agreement of the parties must be in writing and executed by them, and I have never known a lease of property of this character upon which a building was to be erected for a term which might cover 65 years being executed that rested in any other engagement than by a writing between the parties to make it valid. * * * Q. Now, at that time, when you undertook to get a tenant, you understood that if this property was leased, and a building erected upon it, the engagement between the parties would be represented in a written lease? A. Why certainly, expected it would be."

The other plaintiff, Strauss, testified:

"Q. You knew, when you took up the subject of leasing this property, that there was to be a written lease? A. Well, I always took that for granted, that if we close negotiations the lease is to be drawn and signed."

One of the defendants, Thomas R. Hall, testified:

"Q. Did you expect that your engagement that you should make between these parties when you entered upon your negotiations would culminate in a written instrument? A. Yes."

The testimony of this witness—and he is corroborated by the witness Rogers—is that the transaction was not closed at the interview of December 14th. On the contrary, all that the negotiations had amounted to up to and including that time was that the parties had agreed upon certain matters, and it was then contemplated that the entire arrangement between them should be embodied in a written lease, which would necessarily contain provisions as to several subjects which had not then been discussed, and that, in the event that the parties should not be able to agree as to all of the provisions to be inserted in the lease, the transaction would not be closed.

· At the interview on December 14th, the time within which the new building was to be erected was not discussed, and yet it was contemplated this was to be one of the provisions contained in the lease, and also a provision as to the remedies of the landlord in case the tenant failed to erect the building or pay the rent stipulated, and there were also other provisions necessarily to be inserted in a lease of this character. The transaction finally fell through because of the inability to agree as to what the landlord's remedies should be in case of default on the part of the tenant; the tenant's attorney insisting that, in case of the failure of the tenant to erect the building, the landlord's remedy must be by a suit in ejectment, while, on the other hand, the attorney for the landlord insisted that in the event of such default the landlord should be entitled to summary proceedings—a material difference—because in the one case the possession could be obtained quickly, while in the other it might take many months or years.

It seems to me therefore the court erred in not directing a verdict in favor of the defendants, and in this connection attention is called to the case of Sherry v. Proal, 131 App. Div. 774, 116 N. Y. Supp. 234, recently decided by this court, and which would seem to be decisive of the question here presented.

But if the defendants were not entitled to the direction of a verdict, then, clearly, when all of the evidence is considered, the case should have been sent to the jury to determine whether the minds of the parties met at the conclusion of the interview on December 14th upon a completed agreement of lease. The question whether the specific details, which the parties at that time did agree upon, were sufficient to constitute a meeting of minds upon all the essential provisions of a lease, was one of fact, as to which the defendants were entitled, as requested, to have the jury pass upon. If the direction of a verdict for the plaintiffs were based upon the theory that the failure of the parties to agree was due to the act of the defendants subsequent to the interview of December 14th, in imposing new and unreasonable terms, then it was for the jury to say whether such proposed terms were unreasonable.

I am of the opinion the judgment and order appealed from should be reversed, and a new trial ordered, with costs to appellants to abide the event.

INGRAHAM, J., concurs.