JAMES M. BROWN, CHARLES CONGDON and ROBERT B. POTTER, Respondents *v.* THE NEW YORK CENTRAL RAILROAD, Appellant.

A proposition and the acceptance thereof, by correspondence, do not form a contract, so long as essential matters affecting the rights of the parties are left open for further consideration.

The rule by which the question may be tested is, could the terms be sufficiently ascertained and inferred from the correspondence to enable a court to enforce specific performance of the contract as a whole.

Although the terms specified in the correspondence are the main features of the formal contract subsequently executed, it does not, for that reason, relate back to the date of the correspondence.

An agent of the plaintiffs wrote to the defendant's agent, in March, proposing to dispose of the plaintiffs' railroad by a lease to the defendant, at

$60,000 per year, with the right to extinguish the rental at a time to be agreed upon, by the payment of $1,000,000, the rent to commence April 1st, if the plaintiffs were then ready to give possession, adding: "The form and covenants of the lease, and the rental certificates and other details, will require consideration, and can be hereafter arranged." The defendant's agent replied by letter, accepting "the proposal contained in your note on the terms therein suggested," adding "this lease to be perpetual, unless terminated by purchase." On the first of April the plaintiffs' agent wrote again, stating that the rent began that day, and that he was ready to put the defendant in possession of the road. In July the parties executed a lease, containing provisions as to the time when the defendant might purchase at $1,000,000, for the rental certificates, taxes, the right to sell or exchange portions of the demised premises and other details, and that the rent should commence on the first of May, but without prejudice to either party as to the question of rent prior to May 1st, and the possession was then delivered to the defendant. In an action to recover of the defendant $5,000 rent for the month of April,—*Held*, that the correspondence did not form a contract, and the plaintiff was not entitled to rent for the month of April.

(Argued September 23, 1870; decided December 28, 1870.)

Appeal from a judgment entered upon the order of the General Term of the Supreme Court, in the first district, affirming a judgment in favor of the plaintiffs, entered upon the report of Daniel Lord, Esq., referee.

This action was commenced in the Supreme Court, the place of trial being the city and county of New York. The issues joined therein were referred, and on the trial thereof the following facts appeared, viz. :

Prior to the 25th day of March, 1858, the plaintiffs became the owners of the Canandaigua and Niagara Falls railroad. On that day Mr. C. N. Potter, on behalf of the plaintiffs, in a written correspondence with the authorized representatives of the defendant, proposed to dispose of that road to the defendant for $60,000 a year, payable semi-annually in New York, with the right to extinguish the rental "*at a time to be agreed upon*," by the payment of $1,000,000; the rent to commence on the 1st day of April then next, if the plaintiffs should be then ready to give possession. In Mr. Potter's proposition he stated that the form and covenants of the lease and the rental certificates and

*other details would require consideration, and would be
thereafter arranged.* On the 27th of the same month the
defendant replied in writing, accepting the proposal on the
terms suggested, viz.: Lease at the annual rent of $60,000,
payable semi-annually in the city of New York, with right to
extinguish by payment of $1,000,000; the lease to be per-
petual, unless terminated by a purchase. On the same day
Mr. Potter acknowledged in writing this acceptance of his
proposition, and on the 1st of April wrote to the defendant,
stating that the rent began that day, and expressing his readi-
ness, and offering then to put the defendant in possession of
the road. No lease other than that indicated by this corres-
pondence had been entered into, nor had any time been
agreed upon for the extinguishment of the rental by the pay-
ment of $1,000,000, nor did the defendant then take posses-
sion of the road. In June following, while the parties were
negotiating as to the details of the lease, the defendant insisted
that the rent should not commence on the 1st day of April,
assigning as a reason that the details of the lease had not
been completed, so that they could take possession under it.
In July following, terms were agreed on, and rent was to be
payable from the 1st of May, without prejudice to the claim
of either party as to rent, from the 1st of April, and the
road was then actually delivered to, and taken possession of,
by the defendant. The lease, as entered into between the
parties, contained certain provisions or details which appear
in the opinion of the court. The referee ordered judgment
for the plaintiff for $5,000, being the rent for the month of
April, besides interest from November 1st, 1858, for which
sum, with costs and allowances, amounting in all to some
$7,244, judgment was entered, and upon appeal to the
General Term in the first district, was affirmed, when the
defendant appealed to the Court of Appeals.

*Sidney T. Fairchild,* for the appellant (presenting also
brief of Judge A. C. Paige, at General Term), as to the effect
of the correspondence, cited Story Eq. Jur., §§ 751, 767, 770;

Fry on Sp. Perf., §§ 221, 229, 230–1–2; *So. Wales R. R. Co.*
v. *Wythes* (5 De G. M. & G., 888); S. C., 6 Ho. of Lords,
238; *Buckmaster* v. *Thompson* (36 N. Y., 558); Chitt. on
Cont., Perkins 5th ed., §§ 1, 2, pp. 9, 65, 83; *Mactier's
Admrs.* v. *Frith* (6 Wend., 103, 111, 115); 2 Stark. on Ev.
title "Parol Evi." part 1, pp. 755–762, 7th Am. ed.; 1
Greenl. Evi., §§ 297–300; 1 Fonblanque Eq., § 7, p. 171;
*Rose* v. *Cunningham* (11 Ves., 550); Sugden on Vendors,
2d ed., pp. 46, 102; Newl. on Cont. ch., 8, p. 151; 1 Chitt.
Gen. Pr., 118; Jeremy's Eq. Jur., 441; 2 Stor. Eq. Jur., §§
757, 764, 7, 9, 770–780; Willard's Eq., 268; *Bromley* v.
*Jeffreys* (2 Vern., 415); *Kennedy* v. *Lee* (3 Meri., 451);
*Calverley* v. *Williams* (1 Ves., 210); *Omerod* v. *Hardman*
(5 id., 722); 12 id., 466; 13 id., 73, 79; *Daniels* v. *Davidson*
(16 id., 248); *Milnes* v. *Gery* (14 id., 407); *Gordon* v. *Tre-
velyan* (1 Price, 70); *Stratford* v. *Bosworth* (2 Ves. & B.,
341); *Revelle* v. *Hussy* (2 Ball. & Beatt., 369); *Clinan* v.
*Cooke* (1 Scho. & Lef., 22); *Lindsay* v. *Lynch* (2 id., 1);
*Harnett* v. *Yielding* (2 id., 554); *Savage* v. *Carroll* (2 Ball &
Beatt., 453); *Armond* v. *Anderson* (2 id., 369); *Hallet* v.
*Ayre* (2 Sim. & Stu., 195); *Carr* v. *Duval* (14 Peters, 77,
83); *Colson* v. *Thompson* (2 Wheat., 336); *Kendall* v. *Almy*
(2 Sumn., 278); *Parkhurst* v. *Van Cortland* (1 John. Ch.,
273); *German* v. *Machin* (6 Paige, 288); *Abeel* v. *Radcliff*
(13 John., 300); *Ide & Smith* v. *Stanton* (15 Vt., 685);
*Hutchinson* v. *Bowker* (5 Mees. & Wels., 535); *Falls* v.
*Gaistus* (9 Porter, 605); *Hazard* v. *N. E. M. Ins. Co.* (1
Sumn., 218); *Eliason* v. *Henshaw* (4 Wheat., 425); *Tuttle*
v. *Love* (7 John., 470); *Frith* v. *Lawrence* (1 Paige, 434).

*W. W. MacFarlane*, for the respondent, to the same ques-
tion, cited 6 Wend., 103, *supra*, note 117; *Vassar* v. *Camp*
(11 N. Y., 441); *Brisban* v. *Boyd* (4 Paige, 17); *Clark* v.
*Dales* (20 Barb., 42); *Rowland* v. *Phalen* (1 Bosw., 43);
*New Haven R. R. Co.* v. *Pixley* (19 Barb., 428); *Allen* v.
*Harding* (2 Eq. Cases, Abr., 17); *Milnes* v. *Gery, supra;*
*Pym* v. *Blackburn* (3 Ves., 34); *Oldfield* v. *Round* (5 Ves.,

58); *Jackson* v. *Jackson* (19 Eng. L. & E., 545); *Hill* v. *Ressegieu* (17 Barb., 162); *Richard* v. *Edich* (id., 260); *Windham Cotton Co.* v. *Hartford & C. R. R. Co.* (23 Conn., 373); *Martin* v. *Pycroft* (15 Eng. L. & Eq., 376); *Parkhurst* v. *Van Cortland, supra.*

Gray, C.  The facts, as they were found by the referee, established nothing more than that there was a negotiation between the parties, having for its object a disposition of the road to the defendant by a perpetual lease, with the right on the part of the defendant, at some time, to become the purchaser on the payment of $1,000,000.  The time when the rent should commence, its amount, when payable, the place of payment, and the sum to be paid by the defendant in order to become the owner instead of a perpetual lessee of the road, were well understood; but the time when the defendant should be at liberty to change its status from lessee to owner was purposely left open for future negotiation; as were also the form and covenants of the lease, the rental certificates and *other details*, which, in the opinion of the plaintiff, would require consideration, were also left open to be thereafter arranged.  Whether the mere form of a contract or other matters unessential to the rights of contracting parties will or will not prevent the completeness of a contract where the parties have purposely left such matters open for future arrangement need not now be considered; but if there are essential elements affecting the rights of the parties, which are not implied by, or to be inferred from what the parties have agreed upon, but left open for future consideration and adjustment, the contract as a whole lacks completeness, and no action can arise upon it.  It does not require argument to prove that the right of the defendant to elect whether to be a perpetual lessee or purchaser at some future time was an essential right, and that the time when the right might be asserted was also essential; as much so as to a prudent borrower of money, whose interest as well as his comfort might be greatly promoted by the exercise of his right to pay his

debt and cease to be a borrower.   We cannot in any way so
well determine to what things the plaintiff referred as details
requiring consideration as by referring to some of the pro-
visions of the contract finally agreed upon.   One is, that the
defendant is to pay " all taxes, rates, charges and assessments,
ordinary and extraordinary, which may be in any way imposed
upon the premises, or any part thereof;" another, the right
to " exchange the demised lands or buildings for other lands
more convenient or necessary for its use;" another, " from
time to time, during the continuance of the lease, to sell and
dispose such parts of the demised premises as may not be
necessary for the use of the demised railroad."   There are
other equally important details in addition to the right
secured to the defendant to extinguish the rent by the pay-
ment of $1,000,000 at any time prior to April 1, 1888, by
giving six months' notice, and thus end their relation of
landlord and tenant.   No one of these provisions could by
possibility have been implied by what was agreed upon by
the correspondence of the parties prior to and on the 27th
of March, 1858.   As a test, suppose the defendant had been
a real person, instead of a corporation, and had died on the
2d day of April following the 27th day of March, 1858, and
his heirs had refused to complete the contract, or take posses-
sion of the road, or pay rent, and an action had been brought
by the plaintiffs to compel a specific performance of what the
plaintiffs have alleged to be a contract.   The first thing to be
done would be to set about the work of ascertaining what, as
a whole, the contract was; what the parties meant as to the
time of paying the one million of dollars, by saying that the
defendant might do so " at a time to be agreed upon."   It cer-
tainly could not be said that any time was implied as a limit,
within which it should, or should not be paid.   But without
this insurmountable barrier in the way, how could what the
parties denominated *details*, which in their judgment would
"require consideration," and which the referee regarded as
indefinite, unessential arrangements, be settled?   From what
data in the alleged contract, so far as the correspondence went

toward making one, could the court ascertain what they were, so long as the parties themselves did not know? They had, on account of the consideration which they would require, deferred them for future thought and arrangement? The contract, as subsequently completed, shows that they were not only essential, but such as could not be judicially settled as being implied by the correspondence, or within the contemplation of the parties. It was urged, that because the parties subsequently agreed upon a time within which the defendant might pay the million of dollars and become the owner of the road, and settled the other details of the contract, it was in legal intendment a completion of the contract as of the day when the correspondence terminated, and entitled the plaintiffs to rent from the 1st of April. The answer is, that the defendant, before completing the contract under which it took possession of the road, refused to do it with the understanding that rent should be paid from April 1st; and when it was executed, it was expressly agreed that it should not prejudice either party as to the question now under consideration. It may be that the defendant was remiss in its efforts to fix a time for becoming the owner, instead of remaining the lessee of the road, and in arranging other details of the contract. Be that as it may, lack of diligence on its part in reducing negotiations to an agreement is not now a legitimate subject for consideration. The judgment was erroneous and should be reversed.

Earl, C. As the defendant did not have possession of the road in April, they can only be made liable for the rent claimed by virtue of some agreement. Here the agreement to pay rent, if any, was part of an agreement for a perpetual lease of the road. There was no independent agreement to pay for the month of April alone. As the lease, therefore, was to be perpetual, it was required to be in writing.

The correspondence prior to July did not make a lease, as the minds of the parties had not met. There were many matters to be settled, and the correspondence shows that the

parties did not understand that it made the lease or agreement between them. It shows that they intended that the agreement between them should be formally reduced to writing. The time when the rent was to be extinguished by purchase was to be agreed on, and the forms and covenants of the lease, and the rental certificates and other details were left for future consideration and arrangement. That the matters thus left for future adjustment and agreement were many and important, will be seen by the lease subsequently executed.

In *Lyman* v. *Robinson* (14 Allen, 254), Judge FOSTER, says: "A valid contract may doubtless be made by correspondence, but care should always be taken not to construe as an agreement letters which the parties intended only as a preliminary negotiation. The question in such cases always is, did they mean to contract by their correspondence, or were they only settling the terms of an agreement into which they proposed to enter after all its particulars were adjusted, which was then to be formally drawn up, and by which alone they designed to be bound?" "The circumstance that the parties do intend a subsequent agreement to be made, is strong evidence to show that they did not intend the previous negotiations to amount to an agreement." (Lord CRANWORTH in *Ridgway* v. *Wharton*, 6 H. L. Cas., 268.) In the same case Lord WENSLEYDALE says, p. 304 : "An agreement to be finally settled must comprise all the terms which the parties intended to introduce into the agreement. An agreement to enter into an agreement upon terms to be afterward settled between the parties, is a contradiction in terms. It is absurd to say that a man enters into an agreement till the terms of that agreement are settled. Until those terms are settled, he is perfectly at liberty to retire from the bargain."

The principles here laid down fully cover this case, and it follows that the judgment must be reversed and new trial granted, costs to abide the event.

LEONARD, C. The correspondence created no agreement. It purported to arrange only certain portions of a contem-

plated agreement, and conceded that there were other material portions to be arranged thereafter. Neither party could have maintained an action for specific performance, or for damages for non-performance, on an agreement evidenced by the correspondence, for the reason above stated. It was not possible for any court to declare the covenants, referred to by the correspondence, and not then agreed on; and until that was done the agreement was inchoate, not capable of enforcement. There was no agreement concluded till in July following. Either party could refuse to proceed with the negotiation till that time.

The judgment should be reversed and a new trial ordered.

For reversal, GRAY, LEONARD and EARL, CC. For affirmance, LOTT, Ch. C., and HUNT, C.

Judgment reversed and new trial ordered, costs to abide the event.