SHERRY v. PROAL.

(Supreme Court, Appellate Division, First Department. April 16, 1909.)

1. LANDLORD AND TENANT (§ 38*)—PAROL LEASE.
    Where a landlord and tenant entered into a parol agreement for a new lease, and the only matters definitely settled were the subject, rent, and term, and there was no agreement when and how the rent should be paid, or what covenants and conditions should be incorporated, but the landlord directed the tenant to sign a lease already sent to him by the landlord, merely changing the term contained therein, the agreement is not a complete lease in præsenti, and there is no presumption, arising from the fact that the tenant holds a written lease of the premises, that the new lease was to be in the same form.
    [Ed. Note.—For other cases, see Landlord and Tenant, Dec. Dig. § 38.*]

2. LANDLORD AND TENANT (§ 23*)—VALIDITY OF PAROL LEASE.
    A lease for a term not within the statute of frauds can lawfully be created, where the parties have orally agreed upon all the terms, and nothing is left to be done except to put them in writing, although the written lease is never executed.
    [Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. § 60; Dec. Dig. § 23.*]

3. CONTRACTS (§ 32*)—REQUISITES—EVIDENCE OF AGREEMENT.
    That parties to an alleged oral agreement intend to have a formal written agreement executed is evidence that the oral agreement is not intended to be binding.
    [Ed. Note.—For other cases, see Contracts, Cent. Dig. § 159; Dec. Dig. § 32.*]

    Clarke, J., dissenting.

Appeal from Trial Term, New York County.

Action by Louis Sherry against Arthur B. Proal. Judgment for plaintiff, and defendant appeals. Reversed.

See, also, 125 App. Div. 508, 109 N. Y. Supp. 1008.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Argued before PATTERSON, P. J., and INGRAHAM, CLARKE, HOUGHTON, and SCOTT, JJ.

Martin W. Littleton, for appellant.
Franklin Bien, for respondent.

SCOTT, J.  The plaintiff sues and has recovered a judgment for one half year's rent, from October 1, 1906, of an apartment in an apartment hotel.  Plaintiff had occupied the apartment for a number of years under a written lease, which had been renewed from year to year by written renewals; the last renewal expiring on October 1, 1906.  In March of that year plaintiff and defendant had a conversation respecting the renewal of the lease, and after much discussion a tentative agreement was made for a new lease for five years at an increased rental.  This lease was never executed, and plaintiff makes no claim under it.  Plaintiff testifies that he prepared and signed duplicate copies of such a lease, and directed his bookkeeper to send them to defendant for signature.  There is no evidence that they were ever delivered to defendant, or at his apartment or his office, and he denies that he ever received them.  Soon after this conversation both parties went abroad, leaving the matter of a new lease undetermined.  Defendant returned to New York in July, and then took up the matter of a new lease with one Flauraud, the manager for plaintiff who was still abroad.

The question at issue between the parties is a very narrow one, and arises out of this conversation between Flauraud and defendant; the former testifying that a definite and precise agreement was then made for a new lease for one year, and the latter testifying that he offered to take a lease for a year, but that Flauraud declared that he had no authority to make such a lease.  Although the parties to this conversation differ as to its ultimate outcome, there is no reason to believe that either is consciously and willfully testifying falsely, but rather that they honestly differ in their recollections as to what was finally said.  A jury has twice decided to accept Flauraud's statement, and we shall undertake the consideration of the case from the standpoint of the accuracy of his recollection.  His statement of the conversation is as follows:

"Mr. Proal came in, and after passing the time of day, and asking about how he was, and so on, I asked Mr. Proal if he would send me the lease that Mr. Sherry had sent him for signature; that his lease had been signed by Mr. Sherry.  I said for Mr. Proal to return the lease that Mr. Sherry had signed, to me, with his signature attached, in order to complete the leasing of the apartment.  Mr. Proal said he had not received them.  I told him that, if he looked in his apartment or at his office down town, he probably would find them.  After a little more conversation on the matter, he said: 'Now,' Flauraud, I don't like that lease.  I want you to change that lease for me.'  'Well,' I said, 'what do you want me to change?'  'Well,' he said, 'I want you to make my lease the same as the old lease was; that is, I want the five years with the option of one at a time, at the same rental as the first year—that is, $14,000.'  I said to Mr. Proal: 'Don't ask me to do a thing of that kind.  You talked that matter over with Mr. Sherry, and it has all been settled, and you know Mr. Sherry does not want to give any options at all.  Now,' I said, 'I will do anything for you, but I can't do that.'  So, after a little while, further talk and conversation, he said: 'Well, give me a one year's lease,' says

he, 'send me down the lease.' I says: 'No; it is not necessary. You have got those. Just strike it out, and put one year, instead of five.' That was all that was said."

It is apparent from this statement of the conversation, accepting it as accurate, that both Flauraud and Proal expected and intended that the oral agreement then arrived at should subsequently be embodied in a formal written lease. The plaintiff recognizes this, and places his right to a recovery squarely upon the rule, which is well established and often enforced, that in a case wherein, under the statute of frauds, a tenancy can lawfully be created by parol, and the parties have orally agreed upon all the terms, nothing being left to be done except to put them in writing, the letting will be deemed to be complete, although the stipulated written lease should never be executed. This well-recognized rule is, however, to be applied with caution, and is never applied unless it clearly appears that every material term of the contract was in fact agreed to, and that nothing remained for future negotiations and agreement. So we find in a great majority of the cases in which the rule has been applied that the meeting of the minds has been evidenced by letters or other writings, which have shown beyond dispute just what was agreed to. Sanders v. Pottlitzer Bros. Fruit Co., 144 N. Y. 209, 39 N. E. 75, 29 L. R. A. 431, 43 Am. St. Rep. 757; Peircé v. Cornell, 117 App. Div. 66, 102 N. Y. Supp. 102. Where the question is, as in the present case, one of intent, it has always been recognized that the circumstance that the parties intended to have a written formal agreement is strong evidence that the oral agreement was not understood or intended to be binding. Bryant v. Ondrak, 87 Hun, 477, 34 N. Y. Supp. 384, citing Brown v. N. Y. C. & H. R. R. Co., 44 N. Y. 79; Franke v. Hewitt, 56 App. Div. 497, 68 N. Y. Supp. 968.

In Arnold v. Rothschild's Sons Co., 37 App. Div. 564, 56 N. Y. Supp. 161, affirmed 164 N. Y. 562, 58 N. E. 1085, the parties had negotiated through a broker for the lease of certain premises. These negotiations had resulted in a note from the broker to defendants saying:

"I have closed the lease for you as directed with Mr. Arnold of store and bas. 742 Broadway for one year from February 1st, 1902, at $5,000 rental payable monthly."

To which defendants had replied:

"Yours received. Mr. R. is satisfied."

It was in contemplation that a formal written lease should be executed. Like the defendant in the present case, the Rothschilds never took possession, but sent word in January that they could not use the store. As in the present case, no attempt was made by plaintiff to procure the execution of a written lease, but suit was brought when the first installment of rent fell due. The case, therefore, much resembles the case at bar, being, if anything, stronger in favor of the plaintiff, because the letters left no doubt as to what was agreed to. The court said:

"It is claimed by the appellants that if all the terms of the agreement were finally concluded between the parties, so that nothing remained except to re-

duce these terms to writing and execute the writing, the contract was completed, although it was understood between the parties that a formal lease should be executed. It is quite true that, where a valid contract has been made by which the parties understand that their rights are fixed, such a contract may be enforced, although there may be a stipulation of the understanding between them that a more formal contract shall be executed. But it is essential to the enforcement of such an informal contract that the minds of the parties should have met upon all the terms as well as the subject-matter of the contracts; and if anything is left open for future consideration, or if the subject-matter does not appear to be understood alike between the parties, the informal paper cannot form the basis of an agreement. * * * As every one knows, a formal lease contains many stipulations which are not found in the contract growing out of the conversation which Tanenbaum had with these parties. All those stipulations have an important effect upon the rights of the respective parties; and, when it was understood that such a formal lease should be executed, it would be necessary that the preliminary conversations should be quite full and explicit as to the terms of the contract before the parties should be held to a completed contract in the absence of what they had agreed should be the final evidence of the bargain."

In Brown v. N. Y. C. & H. R. R. Co., 44 N. Y. 79, the subject of contract was a railroad. Negotiations were had looking to a perpetual lease to defendant, with the right to purchase at a given price. The time when the rent should commence, its amount, when payable, the place of payment, and the sum to be paid by defendant in order to become the owner, instead of a perpetual lessee, were agreed upon. The time when the defendant might purchase was not fixed, and the form and covenants of the lease and some other details were left for future determination. The court held that no valid, enforceable agreement had been shown, although so far as the leasing part of the agreement was concerned nothing was left open except the form of the lease. Judge Earl quotes with approval from Ridgway v. Wharton, 6 H. L. Cas. 268, as follows:

"The circumstances that the parties do intend a subsequent agreement to be made is strong evidence to show that they did not intend the previous negotiations to amount to an agreement. * * * An agreement to be finally settled must comprise all the terms which the parties intended to introduce into the agreement. An agreement to enter into an agreement, upon terms to be afterwards settled between the parties, is a contradiction in terms. It is absurd to say that a man enters into an agreement till the terms of that agreement are settled. Until those terms are settled he is at liberty to retire from the bargain."

Applying the principle enunciated in these and many other cases to the particular case at bar, and still accepting as accurate Flauraud's version of the conversation between himself and plaintiff, it will be seen that the verbal agreement testified to fell far short of a lease complete in all its details. The only thing actually discussed and agreed upon at that interview was the term for which the lease was to be made. We may assume that the subject of the lease, the apartment then held by defendant, and the amount of rent, which had been agreed to between him and plaintiff, were also thoroughly understood. But beyond this nothing was discussed and nothing agreed upon. Especially was there no agreement as to when and how the rent should be paid, or what covenants and conditions should be incorporated into the lease. Flauraud says that he told defendant to sign the lease already sent to him by plaintiff, merely changing the

term contained therein. This did not amount to an agreement to abide by the terms of that document, for defendant then declared, and now declares, that he never saw it, and there is no evidence that it was delivered to him. It has been held that a written agreement to give a lease "in the same manner that my other leases are drawn, to correspond with the present lease when it expires," did not amount to a lease, but merely to an agreement to make one. Becker v. De Forest, 1 Sweeny, 528; Franke v. Hewitt, supra.

The fact that the defendant, at the time of the conversation, held a written lease of the apartment, raises no presumption of an agreement that the new lease should be in the same form. The old lease was not referred to in any way, and we know that in two vital particulars it differed from the lease the parties were attempting to negotiate, to wit, the rental and the terms. Whether or not the written lease which plaintiff says he prepared contained other differences from the old lease we have no means of knowing. What we do know is that it was the evident intention of both parties that a formal written lease should be executed, and that there were many details which it would be proper to incorporate in such a lease, which were not even discussed, much less agreed to, between Flauraud and defendant. As was said in Sourwine v. Truscott, 17 Hun, 432:

"Unless the lease in all its terms was agreed upon, then there was no binding contract which could be enforced at law. * * * If any of the conditions to be contained in the lease were left indefinite and to be fixed only when the lease should be prepared, there was no such contract as was binding upon the parties at law, whatever may have been the probability that the parties would not ultimately disagree upon the form of the lease, or however unimportant to the lessees the stipulation omitted to be specified might be regarded."

See Booth v. Bierce, 38 N. Y. 463, 98 Am. Dec. 73; Cutts v. Guild, 57 N. Y. 229; Fullerton v. Dalton, 58 Barb. 236.

The conclusion to which this consideration of the authorities leads us is that upon the plaintiff's own showing no valid lease, enforceable at law, was ever made, and there is strong reason for believing that the plaintiff did not at the time, or for a considerable time afterward, consider that an actual lease had been made. A few days after the conversation with Flauraud, and on July 24, 1906, defendant wrote to him that he had decided not to renew his lease. It is true that, assuming a definite lease to have been made, Flauraud was under no legal obligation to answer this letter by asserting that it was too late to withdraw; but, in view of the past relations between the parties, it would have been natural to have done so, if he really understood that a final lease had been definitely agreed upon. No reply whatever seems to have been made to this letter until September 8th, when plaintiff wrote to defendant, rehearsing the latter's negotiations, or, as they are termed, "agreements," both with plaintiff and Flauraud, stating that in relying upon them the season for renting had been allowed to pass, and appealing to defendant as a "matter of justice and honor" to restore the apartment and permit plaintiff to rent it for defendant's account. This is not the language which one would ex-

pect from a landlord who believed that he held a valid, enforceable lease from a solvent tenant.

We have considered the question raised by the appeal solely upon the evidence offered by plaintiff, accepting it as accurate. From that evidence, as we read it, in the light of well-settled legal principles, there was a failure to prove a valid, complete, enforceable lease in præsenti. There was, therefore, nothing to submit to the jury, and the motion for the dismissal of the complaint should have been granted.

The judgment and order appealed from must therefore be reversed, and a new trial granted, with costs to appellant to abide the event.

PATTERSON, P. J., and INGRAHAM and HOUGHTON, JJ., concur. CLARKE, J., dissents.