MacKAY et al. v. TIDE WATER OIL CO.

(Supreme Court, Special Term, New York County.   April 25, 1916.)

1. CONTRACTS ⬤═26—VALIDITY—CONTRACTS BY CORRESPONDENCE.
     A contract may be made by correspondence; the question being whether it was intended that the letters between the parties should constitute an agreement, or are simply to be deemed negotiations between them.
     [Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 119, 120; Dec. Dig. ⬤═26.]

2. CONTRACTS ⬤═16—INTENT OF PARTIES.
     To be final an agreement must comprise all the terms which the parties intended to introduce into it.
     [Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 49–56, 71–92; Dec. Dig. ⬤═16.]

3. BROKERS ⬤═8(3)—ACTIONS FOR COMPENSATION—SUFFICIENCY OF EVIDENCE.
     In an action to recover a broker's commission for the sale of gasoline, evidence consisting of correspondence between plaintiff and the defendant

⬤═For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

*held* sufficient to show a meeting of the minds as to the employment of the plaintiff.

[Ed. Note.—For other cases, see Brokers, Cent. Dig. § 9; Dec. Dig. ☞8(3).]

Action by George D. MacKay and another against the Tide Water Oil Company. Defendant demurred to the complaint, and plaintiffs moved for judgment on the pleadings. Demurrer overruled, with leave to defendant to answer.

Erwin, Fried & Czaki, of New York City, for plaintiffs.
Gay & Goddard, of New York City, for defendant.

NEWBURGER, J. The complaint, after setting forth the incorporation of the defendant, alleges: That the plaintiffs and defendant, on the 3d day of December, 1915, entered into an agreement whereby the defendant employed the plaintiffs to negotiate a sale of 20,000,000 gallons of gasoline for the price of 18½ cents a gallon, until the 10th day of December, 1915, and agreed to pay to the plaintiffs as compensation one-half a cent a gallon, and further agreed that, if the defendant continued to sell to a customer secured by the plaintiffs, the defendant would pay to the plaintiffs a commission of one-half cent a gallon on all gasoline sold to such customer for a period of three years from January 1, 1916. That in consideration of such services to be performed by plaintiffs the defendant gave plaintiffs an option to sell said gasoline upon the terms and conditions and at the prices provided in said contract of employment. That thereafter, and on the 8th day of December, 1915, said option and contract of employment was modified in writing. That thereafter and on the 11th day of December, 1915, the defendant, in writing, extended the period of the option to noon of the 18th day of December, 1915. That on the 14th day of December, 1915, the defendant, in writing, more particularly specified the details upon which it agreed to sell said gasoline. That thereafter, and on the 16th day of December, 1915, the plaintiffs procured a customer, able, ready, and willing to purchase said gasoline, and notified defendant that they, on behalf of their customer, exercised said option. That thereafter, and on said 16th day of December, 1915, the defendant notified plaintiffs that it withdrew and canceled said option, and refused to sell said gasoline. Attached to the agreement are the letters marked Exhibits A, B, C, D, E, F, and G, and which constitute the agreement referred to by the plaintiffs in their complaint. The defendant has demurred to the complaint and the plaintiffs move for judgment on the pleadings.

[1, 2] From a reading of the complaint it is apparent that this is an action to recover broker's commission. Was there a contract of employment? A contract may be made by correspondence, and the question is: Was it intended that the letters between the parties should constitute an agreement or were the same simply to be deemed as negotiations between them? An agreement to be finally settled must comprise all the terms which the parties intended to introduce into the agreement. Sherry v. Proal, 131 App. Div. 775, 116 N. Y. Supp. 234.

[3] The letter of December 3, 1915, from the vice president of defendant to plaintiffs, and marked Exhibit A, annexed to the complaint, simply informs plaintiffs that the defendant is a large producer of gasoline and had 20,000,000 gallons for delivery in 1916, and authorizing plaintiffs to negotiate a sale at 18½ cents U. S. gallon, terms cash, and the price good until December 10, 1915. The next letter, dated the same day and marked Exhibit B, also from the vice president of defendant to the plaintiffs, says:

"If you arrange a sale of this gasoline at a price which we will accept, you will be paid a commission of ½c per gallon. If we continue sales to a customer you may secure for us on this gasoline after the above delivery is completed, we will continue to pay you a commission of ½c per gallon for gasoline sold them for delivery three years from January 1, 1916."

On December 8th the defendant, by its vice president, by letter (Exhibit C) informs plaintiffs that, if Congress passes the bill taxing gasoline, said customer would have to pay the tax. On December 11th the vice president of the defendant writes the plaintiffs (Exhibit D) as follows:

"Tide Water Oil Company, 11 Broadway, New York. D. Q. Brown, 2d Vice President. December 11, 1915. Mr. George D. MacKay, Mr. Tracy F. Neuman, 42 Broadway, New York City—Gentlemen: In regard to the option which you have from me to buy 20,000,000 gallons of gasoline at 18½c per gallon, and in accordance with my previous correspondence with you, I beg to notify you that I hereby give you notice that your option will finally expire one week from to-day; that is, on December 18, 1915, at noon. If, therefore, you desire to accept my offer, it will be necessary for you to notify us to that effect, make satisfactory financial showing, and make agreement with us in regard to payments, amounts of deliveries, shipments, etc., before noon December 18. Very truly yours, [Signed] Dickson Q. Brown. DQB/EAC."

On the 14th day of December, the defendant, by its vice president, wrote the plaintiffs (Exhibit E), after referring to the quality of the gasoline, the method of handling and shipping the same, the following:

"As it will be necessary for us to provide some time ahead to manufacture sufficient quantities of gasoline to carry out this sale, we think we should have some assurance of a financial guaranty that the buyers will carry out their side of the contract, and we expect you to provide some sort of guaranty which will be satisfactory to us. We will not accept a bond of a surety company. We are willing to financially guarantee our ability to carry out the sale and delivery under the terms of sale."

These letters plaintiffs claim constitute the contract of employment. It will be thus seen from a reading of the correspondence that the plaintiffs were employed to procure a purchaser who would make a satisfactory financial showing, and make the necessary agreement as to payments and deliveries, which plaintiffs claim they did by the letter of December 16th (Exhibit F), in which they offered a customer and asked for the drawing of the final contract. As the letter of December 11th (Exhibit D) gave the plaintiffs until December 18th, the notice of the plaintiffs of their readiness to produce the customer ready, willing, and able to purchase was in time and all that was required of them. As to the letter by defendant of the cancellation of

the option, as that appears to be dated the same day as the notice by the plaintiffs of their willingness to produce the purchaser, I am of the opinion that the question as to whether the same was written and delivered to the plaintiffs prior to the delivery by them of their letter (Exhibit F) is a question of fact that cannot be determined on this motion. There was a meeting of the minds as to the employment of the plaintiffs, and the complaint sets out facts sufficient to constitute a cause of action.

Motion granted, with leave to defendant to answer upon payment of costs. Settle order on notice.