JOSEPH P. SULLIVAN, Appellant, *v.* HAPPY HOUR AMUSEMENT COMPANY, Respondent.

Third Department, March 7, 1917.

Landlord and tenant — oral lease for one year — subsequent lease to other persons — evidence — proof justifying finding that binding oral lease was made — failure to reduce oral agreement to writing.

Action by the plaintiff, claiming to be tenant of a moving picture theatre under an oral lease for one year, brought against the defendant to which the owner of the building subsequently leased the premises by a written instrument. It appeared that the president and also the secretary and treasurer of the owner of the theatre, a domestic corporation, having given the plaintiff an oral option to lease the premises, assured him that a writing was unnecessary and that he could have the premises for a certain rental to be paid in advance in the condition they then stood. Thereafter and within the time set, the plaintiff accepted the oral option and paid ten dollars earnest money in order to bind the bargain, for which the defendant's officers gave him a written receipt stating that the money was to apply on the lease of the theatre property. It further appeared that after the plaintiff had made the part payment on the rent the owner's officers stated to him that the theatre was his and that he could do with it as he saw fit. On all the evidence,

*Held,* that it was error to dismiss the complaint in that the jury were authorized to find that the officers of the corporation were acting within the apparent scope of their authority, and because the jury were also authorized to find that a valid oral lease had been given to the plaintiff prior to the written lease given to the defendant.

*Held, further,* that the jury might find that all the terms of the oral lease were agreed upon and that nothing more was to be done except to

reduce them to writing and that the plaintiff had, in fact, been put into possession under the oral lease.

The fact that the terms of the oral lease were subsequently to be reduced to writing is immaterial, for where all the conditions of a yearly letting are agreed upon orally, the failure to execute a written lease, though one is contemplated by the parties, does not permit a cancellation·of the contract.

APPEAL by the plaintiff, Joseph P. Sullivan, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of Chemung on the 21st day of December, 1914, upon a dismissal of the complaint by direction of the court at the close of plaintiff's case.

*Mortimer L. Sullivan,* for the appellant.

*Lewis Henry,* for the respondent.

SEWELL, J.:

The action was begun October 30, 1912, to recover possession of the Colonial Theatre in the city of Elmira, and to recover damages from the defendant for withholding the same from the plaintiff.

The plaintiff claims to be entitled to the premises by virtue of an oral lease made on the 15th day of November. 1911, by F. & H. Schweppe Co., the owner, to the plaintiff.

The defendant claims to be in possession of the premises under a written lease from the same company made on the 22d day of November, 1911.

The complaint was dismissed, at the close of the plaintiff's case, upon the ground that the evidence was insufficient to show a valid or binding lease from the F. & H. Schweppe Company to the plaintiff, in that the oral negotiations and agreement of the parties did not constitute a completed contract of lease, and that the party who made the agreement had no authority to make it on behalf of the owner.

The proof showed that the F. & H. Schweppe Company was a domestic corporation; Henry C. Schweppe was its president and Frederick J. Schweppe the secretary and treasurer; that its board of directors consisted of Frederick J. Schweppe, Henry C. Schweppe and Leonora Schweppe; that Frederick J.

Schweppe owned 651 shares of stock of the corporation, Henry C. Schweppe owned 648 shares and Leonora Schweppe 1 share.

Its articles of incorporation recited that it was authorized "to purchase, lease or otherwise acquire, improve, develop, hire and use, and let, sell or otherwise dispose of real estate and titles and interests in real estate."

The plaintiff's story was that a few days prior to the 15th day of November, 1911, he met Frederick J. Schweppe and asked him if the Colonial Theatre was for lease; that Schweppe replied that Mr. Bernstein had an option until the next night at six o'clock. "I asked him what rental he asked for the place and he told me and I asked him if Mr. Bernstein didn't exercise his option if he would let me have an option" and he said he would until six o'clock the next day. "He came in the next afternoon before three o'clock * * * and he said * * * Mr. Bernstein had given it up. * * * I asked him if he would give me an option in writing; he said it wasn't necessary; if we wanted the theatre we could have it. · * * * We talked over the terms" and agreed on a rental of $2,400 a year to be paid in advance. "I said we were to have the theatre just as it was with everything, all the furnishings in it, and he said 'yes, just as it was.'" The plaintiff testified that the next day he talked with Henry C. Schweppe. "I told him that we had decided to exercise our option on the theatre and that I would like to see Fred. He said that Fred was out but he would * * * find Fred and send him down to the store." "He said that he was glad that we were going to take the lease as we were responsible, and that it would give them a chance to attend to their wall paper business; that they wouldn't be fooling with the theatre business." Fred Schweppe came to the store about an hour after "and I told him that we had decided to take up the lease. He said he was very glad of it, that he was tired of the theatre business and that his brother was tired of it also. I said 'Well, I will just make you a payment on this lease' and he said 'all right. * * *' I paid him the $10.00 and asked him to make out a receipt for it to apply on the lease. He said it wasn't necessary, that his word was good, that the theatre was ours to do with as we saw fit,

but I insisted on a receipt and he went back in my office and wrote a receipt for $10.00." The receipt reads as follows:

"ELMIRA, N. Y., *November* 15, 1911.

"Received of Joseph Sullivan $10.00 to apply on lease of theatre property No. 121–123–125 North Main street, Elmira, N. Y.                              F. J. SCHWEPPE."

The plaintiff stated that "we were to have [the theatre] at the expiration of the contract that they had with some vaudeville performance. * * * We were to have it any time after the following Monday. * * * The term of the lease was to be for one year;" that at the time the receipt was given Schweppe said "he would have his attorney see * * * my attorney and fix up a lease as soon as he returned from New York," and that a day or two after Fred Schweppe took him to the theatre and after showing him about said: "Now if there is anything that you want to do or change in this theatre, it is yours, go ahead and do it."

Upon cross-examination he testified: "I was to have the theatre just as it stood with all the scenery and chairs and fixtures. They were not to move anything out of the theatre; that was understood when I paid the $10.00 on the lease."

The witness Edward J. Toole corroborated the plaintiff as to what took place at the first conversation with Frederick and the conversation with Henry Schweppe. He further testified that he was present when the ten dollars was paid and the receipt was executed; that they "talked until they came to terms;" that he heard the plaintiff say: "I will take it for that Fred. * * * I will take it for a year." "It is all run down and we will try and make some money." "I will give you $10.00 to bind the bargain." He stated that the price was to be $2,400 and that after the matter was talked over Fred said, "have Mort draw up a lease when Mr. Gardner comes home we will sign it." Evidence was also given of a tender of a lease and of $2,390 to the owner by the plaintiff, and of a demand of possession of the owner and of the defendant who was in occupation of the premises.

I think that upon this evidence the jury was authorized to find that Fred Schweppe stood in the place of and repre-

sented the owner and that his acts and agreements were within the apparent scope of his authority, and that they were binding upon it. The principal question to be considered upon this appeal is, whether upon the facts proved the plaintiff had made out such a case as entitled him to go to the jury upon the question whether a valid oral lease of the premises in question was made, whether it established a completed contract for the letting and hiring of it or only an agreement for a lease.

I am also of the opinion that the evidence was sufficient to justify the jury in finding that all the terms were agreed upon, that nothing more was to be done except to reduce them to writing. I am satisfied that the jury might have found that the plaintiff was put into possession of the premises, under and in accordance with the oral lease, from the statement, "the theatre was ours to do with as we saw fit," and the statement, "if there is anything that you want to do or change in this theatre, it is yours, go ahead and do it," which were made by the owner while he was showing the plaintiff about the theatre. However that may be it is clear that they implied, and may well have been understood to mean, that the contract was complete. As there was a nonsuit we are bound to place on the testimony such inferences as are most favorable to the plaintiff.

The fact that the parties decided to have the terms put in writing, and it was not done, is not controlling. It is well settled that where all the conditions of a letting are agreed upon orally, the failure to execute a written lease, though one had been contemplated by the parties, would not prevent the consummation of the contract. (*Wilbur* v. *Collin*, 4 App. Div. 419; *Disken* v. *Herter*, 73 id. 453; *Sanders* v. *Pottlitzer Bros. Fruit Company*, 144 N. Y. 209.) It is strong evidence that the oral agreement was not understood or intended to be binding (*Bryant* v. *Ondrak*, 87 Hun, 477; *Sherry* v. *Proal*, 131 App. Div. 774; *Brown* v. *N. Y. C. R. R. Co.*, 44 N. Y. 79); but the jury could have reached the conclusion from all the evidence in the case that the minds of the parties met and that the oral agreement for a year's renting was complete, even though it was understood that a formal writing, evidencing their agreement, was to be executed, and it was never

drawn. For these reasons I am of the opinion that the learned justice erred in dismissing the complaint, and that the judgment appealed from should be reversed and a new trial granted, with costs to the appellant to abide the event.

All concurred.

Judgment reversed and new trial granted, with costs to appellant to abide event.