FREDERIC G. TOPLIFF, Respondent, *v.* EUGENE SCHIMPFF, Appellant.

First Department, April 8, 1921.

**Sales — action to recover purchase price of corporate stock — evidence — failure to show contract of sale.**

In an action to recover the purchase price of corporate stock, *held*, on all the evidence, that certain proposals by letter and the answers thereto, under the circumstances of the case and the form of the action brought, did not constitute a sale of the stock, but merely preliminary negotiations to the execution of a contract.

APPEAL by the defendant, Eugene Schimpff, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 27th day of October, 1920, on the verdict of a jury for $5,000 rendered by direction of the court.

*J. Franklin Tausch* of counsel [*Tausch, Hamilton & Herrlich*, attorneys], for the appellant.

*William T. Van Alstyne*, for the respondent.

GREENBAUM, J.:

The complaint sets forth two causes of action, one for the purchase price and the other for damages for the breach of

contract. It alleges that on July 1, 1920, the plaintiff entered into a contract with the defendant for the sale of 10,000 shares of the capital stock of the American Silver Corporation for $5,000, which defendant agreed to purchase at that price, but which he refused to accept when tendered to him. In his answer defendant denies the making of the contract as pleaded. All of the conversations and correspondence in connection with the subject-matter of the transaction were had with the plaintiff's attorney, one William T. Van Alstyne. The defendant was a farmer residing in Scranton, Pa., and a stockholder of the American Silver Corporation. The American Silver Corporation was a reorganization of a company known as the Socorro Mining and Milling Company. The negotiations started in a letter written by Van Alstyne, who was then unknown to the defendant, which reads as follows:

                                                  " *June* 10*th,* 1920.
" Mr. EUGENE SCHIMPFF,
        " Scranton, Pennsylvania.

" DEAR SIR: A client of mine has been compelled to take over a certificate of Harry Balfe, trustee for stockholders of Socorro Mining & Milling Company. This certificate entitles my client to receive, on and after July 1st next, 10,000 shares of American Silver Corporation stock, of which corporation I note that you are a director.

" I am authorized to offer the above 10,000 shares for sale, if and when received, at the net price of $.65, the purchaser to have the privilege of taking up the stock in lots of 4000, 3000 and 3000 shares. This offer remains open for one week from this date.

" I understand that bankers are now placing treasury stock of the Silver Co. at $1.25 per share, for which reason I ask you to treat this offer as confidential.

" If interested to buy, further details can be arranged.
        " Yours very truly,
" VAN. MS          WILLIAM T. VAN ALSTYNE."

The defendant paid no attention to this letter, whereupon Van Alstyne sent a second letter, dated June seventeenth, which reads as follows:

" NEW YORK *June* 17, 1920

" Mr. EUGENE SCHIMPF,

" Scranton, Pennsylvania.

" DEAR SIR: Under date of June 10th, I addressed you relative to an offer of 10,000 shares of American Silver Corporation, but up to date have not received an acknowledgment from you.

" Assuming that this letter may not have been brought to your attention, I am now taking the liberty of forwarding to you a copy thereof and should appreciate your courtesy in advising me whether or not you will be interested in the matter.

" Thanking you in advance for the acknowledgment of receipt of this letter, I beg to remain,

" Very truly yours,

" VAN EAD          W. T. VAN ALSTYNE."

Defendant did not reply in writing to this letter but called on Van Alstyne when he was in New York on June 23, 1920, and informed him that he knew a man who might be interested in the purchase of the stock at fifty cents per share. Van Alstyne said he would consider it and thereafter he mailed a letter to the defendant dated June 24, 1920, which reads as follows:

" NEW YORK, *June 24th*, 1920.

" EUGENE SCHIMPF, Esq.,

" 1610 Jefferson Avenue,

" Scranton, Pa.

" DEAR SIR: Since my conference with you at this office yesterday, I have interviewed my client relative to the sale of 10,000 shares of American Silver Corporation stock, as set forth in my letters of June 10th and 17th to you.

" This morning, I telegraphed you as follows: ' Offer for 10,000 American Silver accepted at fifty. Am forwarding contract for signature.' I, accordingly, enclose herewith agreement and duplicate signed by myself, which I trust your client will find satisfactory. If you will have one of the enclosed agreements signed by your client and return it to me with the payment called for, I shall appreciate your courtesy.

" Thanking you in advance for your attention in the matter, I beg to remain      •   Yours very truly,

" VAN MS          W. T. VAN ALSTYNE."

Inclosed in the preceding letter was a proposed agreement which reads as follows:

" NEW YORK, *June 24th*, 1920.

" For the sum of five thousand dollars ($5,000), to be paid as hereinafter set forth, I have sold to....................of ..................Scranton, Pennsylvania, and who has bought from me ten thousand (10,000) shares of stock of the American Silver Corporation, if, as and when issued by the said company to me, payments to be made as follows: five hundred dollars ($500) on the signing hereof, and the balance of forty-five hundred dollars ($4,500) to the American Exchange National Bank, Borough of Manhattan, City and State of New York, for my account within ten (10) days after I shall have notified the purchaser by letter or telegram that I have deposited the said stock with the said Bank for delivery. If such notice is not given on or before August 1st, 1920, the sale is abandoned by both parties, and I agree to forthwith pay back to said purchaser the said five hundred dollars ($500).       GEORGE T. TOPLIFF.

"By ——————.

"*Attorney.*

" SCRANTON, PA., *June* —, 1920.

" I accept the above offer.

"......................

" *Purchaser.*"

Defendant returned the proposed contract with the concluding sentence stricken therefrom accompanied by a letter of which the following is a copy:

"SCRANTON, PA., *June* 28, —20.

" WM. T. VAN ALSTYNE, Esq.,

" New York City.

" DEAR SIR: My client refuses to sign your contract *in its present state.* [Italics ours.] He will deposit five hundred dollars to your credit in either First National or South Side Banks of this City, to be payed to you, when the stock is delivered, subject to draft for forty-five hundred more, making a total of five thousand. In case of failure to take the stock, the five hundred is paid to your client.

" Contract must be without strings, no withdrawal clause, he does not seem anxious, says no trouble to get good investments, rite at home.

" Cincerely yours,

" E. SCHIMPFF."

Van Alstyne testified that when he received this letter with the returned agreement he began the preparation of a new contract in accordance with the suggestions in defendant's letter of June twenty-eighth, but that he reconsidered the matter and decided that the defendant's letter of June twenty-eighth was an offer and that it would be sufficient as a matter of law simply to accept it, since that would establish a contract between the parties. This testimony of course, merely expressed the operations of Mr. Van Alstyne's mind, which were not communicated to the defendant. Thereafter a telegram and a letter each dated July 1, 1920, were sent which read as follows:

" WESTERN UNION TELEGRAM

" *July* 1, 1920.

" EUGENE SCHIMPFF,
    " 1610 Jefferson Avenue,
        " Scranton, Pennsylvania.
" Offer contained in your letter June twenty-eight accepted. Deposit funds to my order First National Bank Scranton.

" WILLIAM T. VAN ALSTYNE."

" NEW YORK, *July* 1, 1920.

" EUGENE SCHIMPFF, Esq.,
    " 1610 Jefferson Avenue,
        " Scranton, Pa.
" DEAR SIR: I beg to acknowledge receipt of your favor of the 28th inst. The terms of the purchase of the 10,000 shares of the American Silver Corporation stock, as outlined by you, on behalf of your client, are entirely satisfactory to my client and accepted.

" I would request that you immediately deposit the initial payment of $500 with the First National Bank of Scranton, Pa., and have the Bank notify me to the effect that the deposit has been made, the balance of the purchase price to be paid upon delivery of the stock as per your letter.

" If you will inform me by return mail in whose name the certificate is to be issued and how you prefer to have the same issued, I will attend to the matter so that you may have the stock in your possession as soon as possible.

" Yours very truly,<br>" W. T. VAN ALSTYNE."

Defendant having received no contract embodying the terms stated by him in his letter came to New York on July seventh and told Van Alstyne that his failure to send such a contract resulted in the loss of the sale. Van Alstyne testified as to this interview that the defendant told him " that the people he was representing would not pay $5,000 for the stock; he said they would pay $4,000; I told him at that time I could not accept the proposition unless it was without prejudice to the contract established by the correspondence. * * * He told me I did not know my business, that there was no contract and he had nothing further to do with the matter." On July ninth Van Alstyne happened to meet the defendant at the stockholders' meeting of the Socorro Company and asked defendant about the stock to which he replied that he was not interested in it. Thereupon Van Alstyne handed him a copy of a letter notifying him that Mr. Topliff, the plaintiff, had intended holding the stock for him as bailee. That letter reads as follows:

" NEW YORK, *July* 12, 1920.

" Mr. EUGENE SCHIMPFF,

  " 1610 Jefferson Avenue,

    " Scranton, Pa.

' DEAR SIR: Having been advised that you have refused payment of the draft, dated July 8, 1920, in the amount of five thousand dollars ($5000.), drawn upon yourself under the provisions of your contract of July 1, 1920, for the purchase of ten thousand (10,000) shares of the capital stock of the American Silver Corporation, I beg to advise that my client, Mr. Frederic G. Topliff, has elected to treat the said stock as your property and that he holds the same for you as bailee, subject to your order.

" Yours very truly,<br>" W. T. VAN ALSTYNE."

At this juncture the situation was that the defendant stated that his client refused to sign the contract as prepared; that certain changes and terms would be satisfactory; that he returned the proposed contract with the objectionable clause stricken out and stated that the " contract must be without strings, no withdrawal clause,  *  *  *."

It must be borne in mind that up to this point the parties had been negotiating with each other *as agents* for the prospective buyer and seller of the shares of stock in question and it is quite evident that the defendant's letter contemplated the preparation of a new form of contract for submission to the prospective purchaser. In other words, defendant's letter of June twenty-eighth was not an offer written by defendant on behalf of his client or himself, but was in the nature of a further step in the negotiations, looking to a formal contract to be signed by defendant's principal along the lines indicated.

Moreover, the so-called offer contained a statement that " in case of failure to take the stock, the five hundred is paid to your client." Van Alstyne's letter of July first, which was intended to be confirmatory of the telegram of the same day, was silent about the acceptance of that part of the offer which was that " in case of failure to take the stock, the five hundred is paid to your client," unless it may be said that the statement in the letter that the terms of the purchase were satisfactory to plaintiff necessarily included the provision just quoted.

It may fairly be argued that the following statement in the so-called acceptance: " Have the bank notify me to the effect that the deposit has been made, *the balance of the purchase price to be paid upon delivery of the stock* " (italics ours), modified the proposal or offer of the defendant in that it bound the defendant or his client absolutely to pay the full purchase price of the stock instead of providing in the words of the offer, " In case of failure to take the stock, the five hundred is paid to your client," meaning that that sum would be a forfeit or the measure of damages in case the purchaser refused to complete.

That this is not a fanciful argument is established by the fact that this action was brought, not for $500, the limit of

recovery contained in the defendant's proposal, but for the full contract price of the stock, and the judgment appealed from was based upon that theory. Indeed, this appears to have been the view of Van Alstyne at the outset, as evidenced by his letter of July twelfth, in which he stated: " I beg to advise that my client, Mr. Frederic G. Topliff, has elected to treat the said stock as your property and that he holds the same for you as bailee, subject to your order."

In our opinion the defendant was entirely right in treating his proposal or so-called offer contained in his letter of June twenty-eighth as merely a step in the negotiations and that it was merely intended to be the basis for a formal agreement between the respective principals to the negotiations.

Eliot on Contracts (Vol. 1, p. 29) states: " Great care should also be taken not to construe the conduct, declarations or letters of a party as proposals when they are intended only as preliminary negotiations. The question in such cases is, did the offerer mean to submit a proposition or was he only settling the terms of an agreement, on which he proposed to enter after all its particulars are adjusted? If it is intended merely to start negotiations which may subsequently result in a contract or is intended to call forth an offer from the one to whom it is addressed, its acceptance does not consummate a contract."

In *Brown* v. *New York Central R. R. Co.* (44 N. Y. 79, 86) it is said: " A valid contract may doubtless be made by a correspondence, but care should always be taken not to construe as an agreement letters which the parties intended only as a preliminary negotiation. The question in such cases always is, did they mean to contract by their correspondence, or were they only settling terms of an agreement into which they proposed to enter after all its particulars were adjusted, which was then to be formally drawn up, and by which alone they designed to be bound? The circumstance that the parties do intend a subsequent agreement to be made, is strong evidence to show that they did not intend the previous negotiations to amount to an agreement." There were other serious errors committed upon the trial such as the refusal of the court to permit defendant, who was sued as principal on the theory that he had not disclosed the name of his

principal, to testify that in the conversation he had with Mr. Van Alstyne on June twenty-third he told him the name of his principal.

It may also be observed that even if the telegram and letter of July first could possibly be construed as an acceptance of defendant's proposal, the most that plaintiff could recover would be the sum of $500. As matter of fact, however, no contract has been shown and the plaintiff has completely failed to prove the cause of action as pleaded. The judgment must be reversed, with costs,. and the complaint dismissed, with costs to appellant.

CLARKE, P. J., LAUGHLIN, SMITH and PAGE, JJ., concur.

Judgment reversed, with costs, and complaint dismissed, with costs.